THE AGNES BARTON.

McGEE and another *v.* THE AGNES BARTON.

*(District Court, E. D. Virginia.* January 5, 1886.)

1. MARITIME LIEN — VESSEL IN FOREIGN PORT FURNISHED WITH SAILS — CONTRACT.
   If a vessel, after a voyage, comes into a foreign port, (Philadelphia,) and while there is furnished with sails, the lien of the creditor who furnishes the sails is that which is given under the general maritime law; and the fact that the creditor is a resident in the home port of the vessel, (Baltimore,) and furnished the sails under a contract made with the managing owner in the home port, does not affect the lien.

2. SAME — ACCEPTANCE OF NOTE — RELEASE OF LIEN.
   The acceptance of promissory note for material furnished a vessel does not release the maritime lien of the creditor for the amount due, unless there is an express release of the lien.

3. SAME — RECEIPT — RESERVATION OF LIEN.
   Where the promissory note of the managing owner (who owns seven thirty-seconds) was taken for the amount due for sails furnished a vessel, and, in the receipt given for the note, the words were added, "which satisfies us for said bill, and all claims against said brig, excepting the interest owned by the managing owner." *Held,* that the lien of the creditor was thereby expressly reserved upon the managing owner's share of the vessel; which, being in its nature a remedial right, could be enforced by a libel of the vessel itself.

In Admiralty.

The brig Agnes Barton came into the port of Philadelphia in the spring of 1885, needing repairs and an outfit of sails. Her home port was Baltimore, and her owners were all residents of that city. One of them, S. H. Travers, was managing owner, and had an interest of seven thirty-seconds in the vessel. The brig lay in the port of Philadelphia while the needed repairs were put upon her; and while she was there, the libelants, William McGee & Son, of Baltimore, contracted with S. H. Travers, her managing owner, to furnish her with a suit of sails for $600, the amount now libeled for. The sails were duly furnished, and were delivered on board the brig while still at Philadelphia. Travers gave in settlement for the price of the sails the note of his firm, S. H. Travers & Son, at four months, indorsed by his son, Geo. C. A. Travers. McGee & Son took this note, and gave a receipt, reciting its contents, and adding the following clause:

"Which satisfies us for said bill, and all claims against said brig, excepting the interest owned by Saml. H. Travers."

To meet the contingency of a decision that the lien for the sails was not as upon a foreign vessel, but as upon a home vessel, and therefore was only such as the laws of Maryland allow upon vessels owned within the state, the libelant duly complied with the requirements of the Maryland statute as to the registration of such liens. The foregoing were the material facts of the case.

*Charles E. Stewart,* and *A. W. Armstrong,* for libelants.    *Robert H. Smith,* for respondents.

HUGHES, J.   I think the lien of McGee & Son for the amount of their bill was upon this brig as a foreign vessel.   She was at Philadelphia, a foreign port; and she was furnished while there with the sails.   The circumstance that the sails were contracted for and made at the home port of the vessel merely confuses the case, and does not change its nature.   The lien attached while the vessel was in a foreign port.   It attached as upon a foreign vessel.   Its character was determined by the delivery of the sails at that port, and could not be changed by the accident that the sails were made at the home port, under a contract also made there.   It is useless, therefore, to consider the technical objections raised by counsel for claimants on the form and time of the registration of the lien in Baltimore.   If it were necessary to do so, I would hold that the registration was in accordance with the requirements of the Maryland statute on the subject; and that the lien was good as a lien upon a home vessel.   But this is a matter of no importance.

The sails were delivered and received by the brig at the port of Philadelphia, where she was a foreign vessel, and the lien for their price was that which is given by the general maritime law.   The case is all fours with that of *The Sarah J. Weed,* 2 Low. 555, in which the ruling was as I have just announced for the case at bar.

The serious question in the case is upon the receipt given by McGee & Son in taking the four-months note of Travers & Son.   It is useless to say that the mere taking of a note for a maritime claim does not release the lien of the creditor of a ship for his claim.   The note is but an evidence of the debt, and does not operate as a novation of it,—certainly not as between the owner of a ship and its creditor.   It concludes both parties as to the amount due, and it postpones the right of the creditor to enforce his lien.   If the time for which the note is made to run is too long, other creditors of the ship may be thereby let in to priority over the holder of the note.   But the general proposition is true that the taking of a note does not release the lien of a creditor of a ship for his demand, as between the owner and the creditor.   There must be an express release, else the lien stands, notwithstanding the taking of the note.   In this case, therefore, the question is, did the libelant release his lien upon the brig when he set out in his receipt for the note that it satisfied him

for his claim against the brig, excepting the interest of Travers, which was seven thirty-seconds of the vessel?

It is very certain that he reserved his lien upon the seven thirty-seconds. A lien is in its essence a remedial right. Therefore, in reserving his lien upon an undivided part of the vessel, the libelant reserved his right of attaching under the lien to the full extent necessary to making good his lien upon the seven thirty-seconds. As the vessel is indivisible, and the lien as to a part cannot be enforced, except upon the vessel as a whole, and there was an express reservation of the lien as to the part, I am of opinion that the right to libel the vessel, so far from being expressly released, was expressly reserved.

If it were necessary in this case, I think I should be warranted in holding that, if the share of Travers were insufficient on a sale of the vessel to produce the amount due McGee, he would, under all the proofs that have been submitted, be entitled to full payment out of the general proceeds of sale. But as there is no doubt but that the share of Travers will fully pay the claim of the libelant with interest and costs, this question is not at all likely to arise.

I will decree for the libelant in accordance with these views of the law of the case, and for execution against the stipulators.