THE MARION S. HARRISS.

WINSMORE v. THE MARION S. HARRISS.

MAIR et al. v. SAME.

FLICK v. SAME.

HARRISS et al. v. SAME.

(District Court, E. D. Pennsylvania.   June 11. 1897.)

1. MARITIME LIENS—SUPPLIES—FOREIGN PORT.

Necessary supplies furnished to a vessel which has not obtained registry in any port, at a port other than that which is the residence of her owner, are supplies furnished at a foreign port, for which a lien lies against the vessel in admiralty, when furnished upon the credit of the vessel, and not upon the credit of the owner.

2. SAME.

Where, in order for temporary purposes to obtain registry for a vessel in a port at which advances had been made to her, her true owner conveys a nominal interest in her to a member of the firm which made the advances, and where such advances were made upon the credit of the vessel at a port other than the port of residence of her true owner, a lien lies against the vessel for such advances.   They are not to be regarded as advances made at the home port.

On December 13, 1895, libels for wages were filed against the Marion S. Harriss, under which she was ordered to be sold.   The other libels above mentioned were subsequently filed.   Upon the sale and the payment of the proceeds in the registry of the court for distribution, the whole matter was referred to Henry Flanders, Esq., as commissioner.   From his report the following facts appear:

The Marion S. Harriss was originally a Norwegian vessel.   She was abandoned at sea, and towed into Wilmington, N. C., where she was sold at auction on January 15, 1894, to S. W. Skinner, a shipwright of that port.   After the sale her shipping documents were returned to Norway.   Skinner sold her in October, 1894, to Philip P. Gardner of Philadelphia, Pa.   At that time the vessel was being repaired at Skinner's yard.   On January 16, 1895, a special act of congress was passed, authorizing the registry of the vessel as a vessel of the United States.   She was so registered by Skinner on March 11, 1895.   On March 12, 1895, he executed a bill of sale of her to Gardner.   Gardner gave back to Skinner a mortgage upon the vessel to secure three notes aggregating $2,750, part of the purchase money.   On March 13, 1895, Gardner executed a bill of sale of one thirty-second of the vessel to W. N. Harriss of Wilmington, N. C.   This bill of sale was made in order to obtain registry for the vessel temporarily in Harriss' name at Wilmington, N. C.   The vessel was accordingly so registered.   No interest in the vessel actually passed to Harriss.   On June 29, 1895, he executed a bill of sale of his nominal interest back to Gardner.

Thomas Winsmore, a merchant of Philadelphia, furnished certain supplies to the vessel.   The greater part of these supplies were delivered at Wilmington before the vessel had obtained any registry, on the order of Gardner.   The remainder were furnished at Philadelphia after she had obtained a registry at Wilmington.   The supplies furnished at Wilmington were furnished upon an express agreement that they should be a lien against the vessel.   Winsmore's libel was for these two items of supplies and for insurance effected by Wins-

more upon his interest in the vessel. The claim for the supplies furnished at Wilmington was allowed by the commissioner upon the authority of The Kalorama, 10 Wall. 204. The claim for the supplies furnished at Philadelphia was allowed on the ground that they were furnished at other than the home port of the vessel. The claim for insurance was disallowed.

John Mair & Son of Philadelphia furnished sails to the vessel for the most part at Wilmington after the passage of the act of congress above mentioned, but before registry had been actually obtained by the vessel. The remainder were furnished at Philadelphia after registry at Wilmington. All were furnished upon the credit of the vessel. The libel was filed to recover these two items and also for insurance. The first two items of claim were allowed, and the claim for insurance rejected by the commissioner as in Winsmore's case.

George Flick of Philadelphia furnished certain metal work for the vessel in November, 1894, while she was at Wilmington, upon Gardner's order. His libel was for these supplies and was allowed.

George Harriss, Son & Co., of Wilmington, N. C., a firm of which W. N. Harriss was a member, made certain advances at Wilmington upon the credit of the vessel after W. N. Harris had reconveyed his interest in the vessel to Gardner, but before any change had been made in the registry of the vessel. Their libel was for these advances and for insurance. The commissioner rejected their entire claim. He held that they had no lien upon the vessel because when the advances were made she was at her home port and it was not shown that under the local law of North Carolina they had any lien for such advances.

Exceptions were filed by Skinner as mortgagee to the allowance of the claims of Winsmore, Mair and Flick; by Harriss for the disallowance of their claim; and by Winsmore and Mair for the disallowance of their claim for insurance. The latter exceptions are not considered in the opinion of the court and appear not to have been pressed at the argument.

Curtis Tilton, for Winsmore, Mair, and Flick.

Alfred Driver, for Harriss.

Thomas Evans, for mortgagee.


BUTLER, District Judge (after stating the facts as above). The exceptions of Mr. Skinner, the mortgagee, must be dismissed, for the reasons stated by the learned commissioner.

The exceptions of George Harriss, Son & Co. must be sustained. In view of the proofs I cannot distinguish the claim of the exceptors from those allowed. W. N. Harriss never had any interest in the vessel. His assertion that he had, and his acts in pursuance of it, would estop him, and doubtless his firm, from asserting the contrary, —against others who were thus misled. The parties here were not misled. Again, he reconveyed his paper title to the owner, Gardner, before the supplies in question were furnished. The failure to record this conveyance seems unimportant.

The only question is, had Harriss an interest, when the supplies were furnished? and of this there is no room for doubt. No question of estoppel is involved. No one contests the right of Harris, Son & Co. to a lien except the mortgagee; and he does so only on the general ground that the vessel is not liable to admiralty liens.

The home port of the vessel was Philadelphia, where Gardner resided; but in view of the facts this is unimportant. The Sarah J. Weed, 2 Low. 555 [Fed. Cas. No. 12,350]; The Vigilancia, 58 Fed. 700; The Agnes Barton, 26 Fed. 542; The Huron, 29 Fed. 183; The Union Express, Brown, Adm. 537 [Fed. Cas. No. 14,364]; The Chelmsford, 34 Fed. 399; The Hiram R. Dixon, 33 Fed. 297. Again, the supplies

of each claimant here were furnished in pursuance of an express
agreement for a lien on the vessel.

A decree may be prepared accordingly.