## THE VIGILANT.

(Circuit Court of Appeals, Third Circuit. January 30, 1907.)

### Nos. 31, 44. 45, 46.

1. MARITIME LIENS—JURISDICTION TO ENFORCE—LIENS GIVEN BY STATE STATUTE.

The admiralty courts of the United States have exclusive jurisdiction to enforce a maritime lien, whether created by the general maritime law or by a state statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 98.

Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. SAME—STATUTORY LIENS—REPAIRS AND SUPPLIES.

Whether a lien for repairs or supplies furnished to a domestic vessel exists by virtue of a state statute is to be determined solely by the provisions of such statute without reference to the limitations and conditions respecting liens on foreign vessels given by the general maritime law.

3. SAME—PENNSYLVANIA STATUTE.

Under Act Pa. June 24, 1895 (P. L. 251), which gives a lien on vessels for supplies or materials furnished for their building or repair under contract with the builders, masters, owners, agents, or consignees thereof, there is a presumption that supplies furnished to a domestic vessel, although on order of the owner, are so furnished on the credit of the vessel, and the lien exists unless it is affirmatively shown to have been waived.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 103.]

4. SAME—SUPPLIES FURNISHED TO FOREIGN VESSEL.

The fact that coal to be supplied to a vessel in a foreign port was ordered by the owner when in her home port does not prevent the attachment of a lien therefor under the general maritime law, if such was the intention of the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 46.]

5. SAME—LIEN GIVEN BY STATE STATUTE—JURISDICTION OF COURT.

A valid maritime lien created by a state statute for supplies furnished to a domestic vessel may be enforced by court of admiralty of any district which obtains possession of the vessel.

Appeal from the District Court of the United States for the District of New Jersey.

Harvey F. Carr, for The Vigilant.

Ellery Robbins and Wm. S. Wallace, for Peale, Peacock & Kerr, Inc.

Willard M. Harris, for Cottingham & Sons Co. and Sam'l Bell, Jr.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. These appeals were heard together, as the cases themselves were heard in the court below.

The libelants in each case, in an amended libel, all ge. in effect, that the Vigilant was an enrolled vessel of the state of Pennsylvania; that the managing owner thereof resided in the state of Pennsylvania, and that the libelants claimed a lien against said vessel for the value

of the supplies furnished the same, as set forth in the said libel, under the laws of the state of Pennsylvania. Except in the respect hereinafter noticed, these libels involve practically the same questions. In the court below, the libels were sustained and decrees entered for the recovery by the libelants from the vessel of the amounts severally claimed by them, and shown to be due, for supplies furnished and repairs done to the said vessel.

The assignments of error upon which the principal contentions of the appellant are founded, are: (1) That the court below erred in holding that the Pennsylvania statute created a valid lien upon the respondent vessel for the debt due on account of supplies furnished or repairs done at her home port, regardless of whether the repairs or supplies were made or furnished expressly upon the credit of the vessel; (2) that the court erred in holding that the lien created by the Pennsylvania statute could be enforced outside of the jurisdiction of the district court, in the state conferring such lien. That the District Courts of the United States having jurisdiction of a contract as a maritime one, may enforce a lien for its security, even when created by the state laws, has been settled by many decisions of the Supreme Court of the United States. It is sufficient to refer to The Lottawanna, 21 Wall. (U. S.) 558, 22 L. Ed. 654, decided in 1874, and The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345, decided in 1893, and the cases cited therein. It is perhaps safe to say that the foundation of every proceeding in rem, in admiralty, is a maritime lien. The existence of a maritime lien being established, admiralty jurisdiction attaches to enforce the same by such a proceeding. The debt due upon a contract, for supplies furnished or repairs done to a foreign vessel, made by the master, agent, or managing owner of said vessel, is, unless the contrary is shown, presumed to have been incurred on the credit of the vessel, and for the security of the debt the general maritime law creates a lien. The reason, as often stated, for the implication made by the maritime law, that necessaries furnished to a vessel in a foreign port are furnished on the credit of the vessel, is that the exigencies of commerce require that a ship "should go," and not be delayed or hindered by the difficulties of ascertaining or making available the credit and responsibility of the owner. In such cases, therefore, the authority of the master, managing owner or other agent, to pledge the ship for debts so incurred, is presumed. It would seem that, under the same circumstances, a lien was given by the civil law for necessaries furnished to a domestic vessel. Whether, as by the civil law, a lien for necessaries furnished to a domestic vessel was given by the general maritime law, or only by the local maritime law, it is fruitless to inquire, as it is well settled that the maritime law of the United States, as administered in their courts of admiralty, gives no such lien.

It is not disputed that, in three of the cases before us, the supplies and services for which claim is made, were furnished to the respondent vessel while at its home port of Philadelphia, and that the jurisdiction of the court below, in admiralty, to entertain these proceedings in rem. must depend upon the existence of a maritime lien under the laws of the state of Pennsylvania.

However anomalous the proposition may be, that states may create liens which they cannot enforce, but which will be recognized and enforced by the federal courts of admiralty, the practice, as said by Mr. Justice Bradley in The Lottawanna, has become "firmly settled, and it is now too late to question its validity." The Pennsylvania statute referred to is the act of June 24, 1895 (P. L. 251), the material parts of which are as follows:

"Ships and vessels of all kinds built, repaired, fitted, furnished and supplied with necessaries for navigation within this commonwealth shall be subject to a lien for all debts contracted by the builders, masters, owners, agents or consignees thereof, for work done or materials and supplies found or provided in the building, repairing, fitting, furnishing, supplying or equipping of the same, in preference to any other debt due from the builders, masters, owners, agents or consignees thereof.

(2) The lien aforesaid shall continue for and during the period of one year next after the work is done or the materials and supplies are furnished or provided to such ship or vessel and no longer.

(3) The lien for work done and materials and supplies furnished as aforesaid shall exist in favor of all shipbuilders, merchants, dealers, tradesmen and mechanics for all work done or materials and supplies furnished or provided in the building, repairing, fitting, furnishing, supplying or equipping of such ships or vessels."

The owner of the vessel here has been adjudicated a bankrupt, and the trustee in bankruptcy is the claimant, whose contention is that the necessaries, whether of repairs or supplies, were ordered by the owner in each instance, and that no credit was given to the vessel therefor; that unless made or furnished expressly on the boat's credit, no liens exist against said vessel under the laws of the state of Pennsylvania. In support of this contention, it is argued that, under the general admiralty law, where necessaries are furnished a foreign vessel under contract with her owner, it must be affirmatively shown that such necessaries were supplied on the vessel's credit, and that this limitation is applicable to the statutory lien here sought to be enforced. This is not a correct statement of the requirements of the law maritime, for the attaching of a lien to the debt incurred for necessaries furnished to a foreign vessel. If it appear that such supplies and repairs are not furnished on the credit of the vessel, no lien attaches, but it is also true that an implication under the maritime law arises, that the supplies or repairs ordered by a master or other ship's agent, were intended to be upon the credit of the vessel, unless the contrary appear. The Supreme Court, in the case of The Emily Souder, 17 Wall. (U. S.) 666–670, 21 L. Ed. 683, says:

"The presumption of law always is, in the absence of fraud or collusion, that where advances are made to a captain in a foreign port, upon his request, to pay for necessary repairs or supplies to enable his vessel to prosecute her voyage, or to pay harbor dues, or for pilotage, towage, and like services rendered to the vessel, that they are made upon the credit of the vessel as well as upon that of her owners. It is not necessary to the existence of the hypothecation that there should be in terms any express pledge of the vessel, or any stipulation that the credit shall be given on her account."

But in the view of the law applicable to the statutory liens here claimed, it is not necessary to determine on the evidence, whether the precise conditions of fact necessary to the creation of a lien, for supplies to

a foreign vessel, by the maritime law, exist or not, although we are of the opinion that there is ground for a just inference that they do. However this may be, we think there is nothing to authorize the proposition, that the limitations attaching to a lien created by the maritime law, for necessaries supplied to a foreign vessel, attach also to a lien which depends for its existence entirely upon a state statute, without regard to the requirement of the statute itself in that respect. It is true that a state law cannot broaden or make narrower the limits of maritime law and admiralty jurisdiction, or confer jurisdiction upon the courts of admiralty, but it can create a lien of a maritime nature, of which those courts have determined they will take cognizance. They take such cognizance, because the lien so created is a maritime lien, and, whether created by the general maritime law or by state statute, such a lien is a matter of admiralty jurisdiction. The lien for supplies furnished to a foreign vessel is enforced, because it exists by the maritime law. The liens in the cases before us are enforced, because they exist by the Pennsylvania statute. In respect to the former, whatever limitations there may be as to the supplies having been furnished on the credit of the ship, are limitations declared by the general maritime law, and are conditions necessary to the existence of the lien under that law. If there are limitations as to the statutory lien, they must be sought in the statute itself which creates the lien. These statutory limitations cannot be disregarded. If they are disregarded, the admiralty court would be attempting to enforce a lien which did not exist. To refuse to enforce a maritime lien confessedly existing by a state statute, because of limitations supposed to attach to a maritime lien created by maritime law, would be to leave such local maritime lien without a forum in which it can be enforced. The general maritime law of the United States creates no lien for supplies to a domestic vessel, and there can, therefore, be no proceeding in rem for the debt so incurred. The lien created, however, by the local statute, being maritime in its nature, furnishes the foundation for such a proceeding in rem in the admiralty court, the jurisdiction of which founds itself upon the existence of a maritime lien, though created by a state statute, in the fashioning, creation and limitation of which the general maritime law has no part. It would be as logical to say, that the condition prescribed by the Louisiana statute, which was under consideration in the case of The Lottawanna, that there should be a registry of the claim in order to effect a lien, could be disregarded, as to say that the maritime lien created by the Pennsylvania statute should not be enforced, because of limitations, foreign to its language and purpose, arbitrarily read into it. Under the Pennsylvania statute, supplies furnished to a domestic vessel, at the request of the owner, master or agent, are taken to be furnished upon the credit of the vessel, and for the debt thus incurred a lien admittedly maritime is given. Because of its maritime character, the United States District Court, sitting in admiralty, has exclusive jurisdiction for its enforcement. It is not competent for such court to say that it will refuse to enforce such an existing lien, which, by reason of its maritime character, is clearly within its jurisdiction.

The contention of the appellants in these cases, that the courts of admiralty will not enforce a maritime lien against a vessel for supplies

created by a state statute, unless it is shown that the supplies were furnished expressly on the credit of the vessel, rests principally, if not altogether, upon what was said by the learned judge who delivered the opinion of the Circuit Court of Appeals for the Sixth Circuit, in the case of The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 396. That language is in part as follows:

"Into such a statute [the state statute creating a lien for supplies to a domestic vessel], therefore, must be imported the limitations which are always applicable to liens of this general class under the admiralty laws. This result would follow, whatever was the intention of the state Legislature in passing the lien law."

Notwithstanding the ability of the distinguished judge who delivered the opinion of the court in that case, we are unable to agree that statutory liens of the kind here in question are thus limited. Upon the facts as stated, the case was correctly decided, and the proposition contained in the language above quoted was not necessary to sustain the decision. The Samuel Marshall had been chartered from its owner, with the express stipulation that the charterer was to have full control, employing and discharging officers and men, and with the obligation of paying all running expenses, including the purchase of coal. Libelants furnished coal to the vessel thus chartered, with knowledge of the fact of the charter, and that the master, who ordered the coal, was directly in the employ of the charterers. They also knew that the charterers were under obligation to furnish the coal, and that they had no authority, by themselves or by their agent, to make the owner liable therefor. Under this state of facts, it was held that the supply men had notice that the company had chartered the vessel, and that the coal was furnished on the credit of the charterer, and not of the vessel, and that therefore, no lien attached under the Michigan statute, giving a lien for all debts contracted for by the owner or master on account of supplies furnished. No debt can be incurred, or lien established on its account, under the maritime law or the statute of a state, except by the authority, express or implied, of the party to be charged. In this case, there was express knowledge by the libelant of the stipulation by the charterer, which rebutted any implication of the authority on the part of the master to charge the vessel. The fundamental principles of agency cannot be ignored in the creation of liens, either by the law maritime or the statutory law of the state. The case of The Kate, 164 U. S. 458, 465, 17 Sup. Ct. 135, 140, 41 L. Ed. 512, was decided upon the same grounds. There, the charter party obliged the charterer to pay for all coal, and the libelant, who supplied the coal on the order of the charterer, with knowledge of this stipulation, attempted to charge the vessel, under a state statute giving a lien for necessaries to a domestic vessel. Mr. Justice Harlan, in delivering the opinion of the Supreme Court, says:

"It is unnecessary for the decision of this case to consider whether the statute of New York, if interpreted as claimed by the libelant, would be repugnant to the commerce clause of the Constitution. We decide only that the libelant has no lien on the vessel under the maritime law, and that the statute of New York, reasonably construed, does not assume to give a lien where supplies are furnished to a foreign vessel upon the order of the charterer, with knowl-

edge on the part of the person or corporation furnishing them, that the charterer does not represent the owners, but by contract with them has undertaken to furnish such supplies at his own cost."

In the case of supplies furnished to a domestic vessel, a state law may imply that they were furnished upon the credit of the vessel, whether ordered by the owner, master, charterer, consignee or other person customarily clothed with authority for that purpose, and create a lien for the debt incurred. But clearly no state law could make such an implication, or create such a lien, if the owner expressly refused authority for thus pledging the vessel, and that refusal was known to the one who furnished the supplies. To contend that it could, would be the assertion of a legislative omnipotence that nowhere exists in our institutions. In an instructive and exhaustive opinion, Judge Putnam, speaking for the Circuit Court of Appeals, First Circuit, in the case of The Iris, 40 C. C. A. 301, 100 Fed. 104, has discussed in all its bearings the admiralty jurisdiction of statutory liens on domestic vessels. In the course of that opinion, he says:

"There remains the third principal point which we have stated—that, in the absence of proof that credit was given the vessel, no admiralty lien can arise, although the circumstances fulfill all the conditions which the local statute requires. This is supported by two supposed authorities. In The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 396, there is a dictum, in effect, that a local lien can be enforced in admiralty only where credit is given the vessel, and that in this respect there is the same limitation as with reference to supplies furnished a ship in a foreign port. The Lottawanna, 21 Wall. (U. S.) 559, 22 L. Ed. 654, is supposed to lay down a similar rule at page 581; but this question did not arise in that case, and at page 580 the opinion says: 'The rights of materialmen furnishing necessaries to a vessel in her home port may be regulated in each state by state legislation.' Also, in The Glide, at page 620, 167 U. S., 17 Sup. Ct. 930, 42 L. Ed. 296, ubi supra, the opinion quotes from The Lottawanna the unqualified language which we have already cited. In truth, this third point is but a repetition, in a new form, of the last question which we have answered and seems to be disposed of by what we have said about The Glide and The J. E. Rumbell; and we have shown, by a full citation of authorities in the early part of this opinion, that the Supreme Court has reiterated the unrestricted power of state Legislatures to create liens on domestic vessels under such limitations as each may determine."

The courts of admiralty cannot create a maritime lien; no more can they arbitrarily change or modify the lien that exists, whether by virtue of the maritime or the local law. The qualities and limitations pertaining to a maritime lien, for supplies to a foreign vessel, are determined by the general maritime law creating the lien, and the qualities and limitations pertaining to a maritime lien created by state law, for supplies to a domestic vessel, must be determined by the state law creating the lien. All that the courts of admiralty can do is to recognize and enforce an existing maritime lien, by whatever law created. "Where the lien given by a state statute is sought to be enforced, the provisions of the state statute in reference to the creation and duration of the lien must be observed." Benedict's Adm. (3d Ed.) § 268. Turning to the Pennsylvania statute; we find that ships and vessels are subjected to a lien for all debts contracted by the masters, owners, agents or consignees thereof, for work done or material and supplies found and provided, etc. The lien thus provided for, therefore, at-

taches for all debts contracted by the master, owner or agents of the vessel. The lien is the consequence of supplies furnished on such a contract, and of this all persons thus contracting in the state of Pennsylvania must be supposed to have knowledge, and such contracts must be taken to have been made in contemplation of this state of the law, viz., that no express pledging of the credit of the vessel is required to create the lien. Of course, like every other privilege or advantage given by law, it can be waived, and an understanding between the parties, that no such lien is contemplated, would be effective for that purpose.

According to the maritime law, under certain circumstances the presence of the owner at a foreign port, where the necessaries are supplied, may negative the intention of pledging the credit of the vessel. It is argued, therefore, but unsoundly, that the presence of the owner at the port where the supplies are furnished to a domestic vessel, should also have the same effect. This might almost prevent the creation of a lien upon a domestic vessel at all, under a state statute, as the owner is presumably at the home of his vessel. The very object of the state law is to give a lien not given by the maritime law, to wit, for supplies to a vessel at its home port, where, it may be, its owner resides, and where the conditions and necessities, in recognition of which the maritime law creates a lien upon a foreign vessel, do not exist. As we have before said, the state law, which says, in effect, that the supplies ordered by a master, owner or consignee, are presumed to be on the credit of the vessel (unless the contrary is shown), enters into the contract, which must be taken to have been made with reference to the law. The burden, therefore, of showing an express repudiation of such a pledge, known to the one who claims the lien, rests upon him who undertakes to rebut its implication.

No case has been cited, and we have found none, in which the decision upon the facts contravenes the conclusions here arrived at. As pointed out by Judge Putnam, in the case of The Iris, supra, the point was expressly taken by counsel in the case of The J. E. Rumbell, supra, that there was no allegation or proof that the supplies were furnished on the credit of the vessel, yet the liens were established by the Supreme Court as within the admiralty jurisdiction, and as displacing a mortgage. In The Kiersage, 2 Curtis (U. S.) 421, Fed. Cas. No. 7,762, and The Young Mechanic, 2 Curtis (U. S.) 404, Fed. Cas. No. 18,180, decided by Mr. Justice Curtis, on appeal at circuit, that eminent jurist deals with the questions here discussed, without intimating any doubt that the liens created by the Maine statute, were to be enforced as they existed under the statute, and independently of any other limitations whatever, the only condition or test of admiralty jurisdiction being that the lien, and the contract to which it was attached, were maritime in their nature. In opening his opinion in the latter case, he says:

"This being a domestic vessel, the lien, if any, is conferred by the local law. If by that law it exists, it may be enforced in the admiralty. If it has ceased to exist, it can be enforced nowhere."

The learned judge who delivered the opinion in the case of The Samuel Marshall, supra, cites the opinion of Mr. Justice Curtis, in The

Young Mechanic, in support of his position, that the limitations and conditions applicable to the liens created by the maritime law in the case of supplies furnished to a foreign vessel, must be "imported" into the state statutes creating the liens which we are now considering. With due respect to that learned judge, we think that he has misconceived the purport of Mr. Justice Curtis' conclusions in the case stated. That distinguished jurist does discuss, at great length, the character of the lien conferred by the statute, and does conclude that it is a lien of the same character as a maritime lien, when the latter is once created, the conclusion arrived at being, simply, that the lien created by state legislatures was to have the same characteristics, force and efficacy as the lien created by the maritime law. The whole object of his discussion, is to show that a lien created by state statute, for supplies to a domestic vessel, is a jus in re, and in that respect partakes of the character of a maritime lien. We have given the opinion of Mr. Justice Curtis in this case careful consideration, and can find nothing therein that does not confirm the opinion at which we have arrived.

In the case of Samuel A. McCaulley, et al., it appears in the libel that the coal for which claim was made, was furnished at Grassy Sound, in the state of New Jersey. This allegation is supported by the evidence, and there is no question that the port at which the coal was delivered was a foreign one, within the meaning of the admiralty law in this regard. The fact that the owner was in the home port when he ordered the coal for the steamer to be supplied in the foreign port, did not prevent the attachment of the lien, if such was the intention of the parties. The Kalorama, 10 Wall. (U. S.) 204, 19 L. Ed. 491. The Agnes Barton (D. C.) 26 Fed. 542. On the question of fact, whether the coal was supplied on the credit of the vessel, it is sufficient to say that we think the court below was justified in so finding.

As to the second general question, viz., that the lien, if any, created by the Pennsylvania statute could not be enforced in the state of New Jersey, little has been said by the appellant. If the statute of Pennsylvania has created a valid maritime lien, enforceable in the admiralty courts of the United States, it has created a jus in re, a right of property which can be enforced wherever the admiralty jurisdiction of the United States extends. Vessels are wanderers, and the lien created by the state statute would be of little value if it ceased to exist whenever the ship chose to sail beyond the limits of the state. The lien created was a maritime lien, which, unlike a lien at common law, can exist without possession of the thing as to which it is asserted. Such a lien has been pronounced good against a bona fide purchaser and a mortgagor, and we see no reason why it cannot be enforced by the district court for the district of New Jersey, sitting in admiralty, having possession of the vessel, by a proceeding in rem.

For the reasons stated, we think the decrees in the several cases mentioned in the caption should be affirmed. And it is so ordered.