## THE HA HÁ.

(District Court, S. D. Alabama, S. D. April 6, 1912.)

No. 1,333.

MARITIME LIENS (§ 30*)—REPAIRS—CONSTRUCTION OF STATUTE.

Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), provides that any person furnishing repairs and supplies to a vessel, foreign or domestic, shall have a maritime lien thereon, and it shall not be necessary to allege or prove that credit was given to the vessel; that (among others) any person to whom the management of the vessel at the port of supply is intrusted shall be presumed to have authority from the owner to procure repairs, etc.; but that, if the furnisher knew or by the exercise of reasonable diligence could have ascertained that the person ordering the repairs was without authority to bind the vessel, then the act shall not confer a lien. *Held*, that such act supersedes all state statutes on the subject, and that one furnishing repairs to a vessel on the order of one who had been in possession of it for some time, claiming to be the owner, was entitled to a lien therefor, unless it was affirmatively shown that he had reason to make inquiry as to the authority of such person, and that such person did not have authority, or that he had waived a lien.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 37, 38; Dec. Dig. § 30.*

Waiver and extinguishment of maritime lien, see note to The Nebraska, 17 C. C. A. 102.]

In Admiralty. Suit by G. D. Henrichs against the gasoline launch Ha Ha. Decree for libelant.

G. B. Cleveland, Jr., for libelant.
Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The act of Congress of June 23, 1910, provides that any person furnishing repairs or supplies to a vessel, foreign or domestic, shall have a maritime lien on the vessel, and it shall not be necessary to allege or prove that credit was given to the vessel; and the following persons shall be presumed to have authority from the owner to procure repairs, etc. (among others), any person to whom the management of the vessel at the port of supply is intrusted. But no person tortiously or unlawfully in possession of a vessel shall have authority to bind the vessel. It further provides that if the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter, or of an agreement for the sale of a vessel, or for any other reason, the person ordering the repairs was without authority to bind the vessel, then the act shall not confer a lien. 36 Stat. at Large, 604.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the case at bar there is no evidence, direct or circumstantial, that the libelant knew that Farrell, the person in possession of the launch at the time, was without authority to order the repairs, even if such authority·as a fact was essential. There was no charter of the vessel, and no agreement for the sale of the vessel. What reason was there appearing at the time the repairs were ordered to put the ·libelant upon inquiry as to the terms and conditions on which Farrell had possession of, and was operating, the launch? If there were circumstances attending the transaction to put libelant upon inquiry, and he chose to shut his eyes and make no inquiry touching these matters, some question might arise. But no such circumstances have been shown. Farrell not only had ostensible authority to order the repairs, but under the act of Congress (June 23, 1910), and on the facts of the case as shown by the evidence, he had full authority to do so. Prior to said act, the presumption of law was that repairs or supplies furnished a vessel in a foreign port, upon the request of the captain, were made upon the credit of the vessel as well as upon that of her owners. It was not necessary to the existence of a lien on the vessel that there should be any stipulation that credit should be given on her account. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; The Vigilant, 151 Fed. 747, 81 C. C. A. 371; The Iris, 100 Fed. 104, 40 C. C. A. 301.

Many of the federal courts had held that state statutes may create a valid lien upon a vessel for a debt due on account of repairs done at her home port, regardless of whether the repairs were made expressly upon the credit of the vessel. In the case of The Vigilant, supra, the court said:

"We think there is nothing to authorize the proposition that the limitations attaching to a lien created by the maritime law for necessaries supplied to a foreign vessel attach also to a lien which depends for its existence entirely upon a state statute, without regard to the requirement of the statute itself in that respect."

The substance of the opinion cited is that whether a lien for repairs done to a domestic vessel exists by virtue of a state statute is to be determined solely by the provisions of such statute without reference to the limitations respecting liens on foreign vessels given by the general maritime law; and there is a presumption that repairs ·done to a domestic vessel, although on the order of the owner or of one lawfully in control of the vessel, are so done on the credit of the vessel, and the lien exists unless it is affirmatively shown to have been waived. As said by the court in the case of The Vigilant:

"Like every other privilege or advantage given by law, it can be waived, and an understanding between the parties that no such lien is contemplated would be effective for that purpose."

Prior to said act of June 23, 1910, there was conflict of decision on the ·question whether the doctrine in relation to foreign vessels that the presence of the owner defeats the lien, and that there was no claim against the vessel, unless there was an express understanding, applied to liens on domestic vessels created by a state statute. There are cases wherein the courts held that a local lien can be en-

forced in admiralty only where credit is given the vessel, and that in this respect there are the same limitations as with reference to supplies furnished or repairs done to a ship in a foreign port. And there is high contrary authority; that is, that, where the statute uses general terms and says nothing about the necessity for an understanding for credit, the lien will arise by virtue of the provisions of the statute. The Alvira (D. C.) 63 Fed. 144; McRae v. Bowers Dredging Co. (C. C.) 86 Fed. 344; The Iris, 100 Fed. 104, 40 C. C. A. 301; The Vigilant, 151 Fed. 747, 81 C. C. A. 371; notably the last two cases here cited. They are Circuit Court of Appeals cases, and the opinions are in my judgment the best reasoned, most logical, and just of any on the subject that have come to my notice.

The conflict referred to doubtless came to the attention of Congress, and Congress concluded to settle the question by the passage of the act of June 23, 1910, whereby all state statutes were and are superseded. From the want of uniformity in the local statutes on the subject very likely arose the conflict in the decisions referred to. However, we now have a federal statute which controls all cases, whether relating to foreign or domestic vessels. There is a maritime lien given on all alike. The only case analogous to the one at bar since the act of Congress of June 23, 1910, that I have seen, is that of The Iola (D. C.) 189 Fed. 979. In that case supplies were furnished to a tug on the captain's orders while at her legitimate work under a charter party, in which the charterers agreed that they would not suffer any liens to attach to the property or any indebtedness to accrue that might constitute a lien. These terms of the charter party were not known to the merchants who furnished the supplies, nor were they put upon inquiry The court held the tug liable for all supplies furnished after the act of Congress of June 23, 1910, and said the liability of the tug after that act "seems beyond question."

But the proctor for claimant contends that the libelant has stated himself out of court by his own testimony; that his testimony shows that the work was done on the personal credit of Farrell, who ordered the work done. I do not agree with this contention. In the first place, the statute declares that any person who furnishes repairs to a vessel shall have a maritime lien on the vessel, and it shall not be necessary to prove that credit was given to the vessel. That lien exists unless Farrell was wrongfully or unlawfully in possession of the vessel (and this is not claimed either in the evidence or argument), or unless it is affirmatively shown to have been waived by the libelant, and by an understanding between the parties that no such lien was contemplated. There is no evidence of any such understanding.

Now, what are the facts as shown by the evidence on that point? Farrell brought the launch to libelant's ways, and engaged him to do some repairs on it. Farrell promised to pay for the repairs when made. Nothing was said about credit being given to Farrell or to the vessel. Libelant testified that Farrell promised to pay the bill and he expected him to do so; that there was no one else as far

as he knew that he could expect to pay it; that he did not give him credit separate from the boat; that Farrell said he owned the boat, and he (libelant) believed he was the owner; that he knew no other owner, and at that time he had never heard of any other owner. Libelant further stated that, when he did the work, he (as he expressed it) "had the idea that the boat would be good for it," and also that Farrell, the owner, would be. He said he knew that Farrell had been running the boat for some time, and had previously got him to do some small repairs on it, for which he paid. After the work was done, Farrell failed to take the boat away and never paid for the work. The law gave libelant a maritime lien, and the evidence does not affirmatively show that he ever waived it. It certainly does not satisfy me that he waived it.

Was libelant authorized to make the repairs on Farrell's request? He testified that the repairs were necessary, and the boat would not have run without them; that Farrell had the boat in his possession for some time, using it in his business of towing, etc., in Mobile river and harbor; that Farrell said he was the owner of the boat, and he had no reason to question the truth of his statement, and he made no investigation or inquiry of other persons as to the truth of his statements. It also appeared from other evidence in the case that Farrell had been engaged in the business of looking after booms, in towing "gunboats" used in raising sunken logs, and in towing logs, etc., and that he used this launch in prosecuting said business.

The claimant, Phinney, testified that he owned the launch since 1906; that he used her himself up to about a year ago; that he let Farrell have her to use for a "boom boat" under an agreement that, if he could afford to pay him anything for the use of her, he would do so. He stated that the boat was lying up and was of no special use to him, and he thought it could be of value to him; that there was no specified amount that Farrell was to pay him, but he ran the boat, and, if he made any money, he (Phinney) would get some of the profits, and, if Farrell did not make any money, he would get none. Phinney further testified that Farrell did not pay him anything, and he did not find out whether he made any money or not. He stated that Farrell had a good name, and that he let him have the boat more to help him than anything else, under the arrangement stated. He stated that he gave Farrell no authority to have repairs made on the engine; that he would not have had the work done; that it was not worth it. Subsequently Phinney found the boat in libelant's possession where Farrell had left it, and took it away with libelant's consent, but refused to pay the bill due for the work done which was presented to him by libelant, saying he had nothing to do with it, and refused to take it. Phinney delivered the launch to Farrell to be operated under his management in his business, but with the agreement that, if there was any money made in the business, Phinney was to get part of the profits. Farrell was a person who, under the statute, was presumed to have authority to procure repairs for the launch. If he had no express authority from Phinney to have repairs made, this was not known to libelant. Under the facts of

the case no express authority was necessary. I think the case in behalf of the libelant is free from difficulty in this respect.

My opinion is that the libelant is entitled to a decree for $30.50, the amount of his bill. It is so ordered.