### THE CHARLES A. DAY.

#### (District Court, D. Maine. April 29, 1920.)

#### No. 530.

1. **Maritime liens** ☞65—**Evidence held to show some repairs by libelant, but not all claimed.**
    Evidence *held* to show that libelant did some carpenter work on a motorboat, entitling him to a lien therefor, but that he did not do all the work claimed, and that it was not worth the full price charged.

2. **Maritime liens** ☞24—**Need not show credit to vessel.**
    By the express terms of Act June 23, 1910, § 1 (Comp. St. § 7783), one claiming a lien for work done on a vessel need not allege or prove that credit was given to the vessel.

3. **Maritime liens** ☞65—**Waiver of lien must be clearly shown.**
    One making repairs on a vessel should not be deprived of his lien on the ground of waiver, unless there is clear affirmative testimony establishing waiver.

In Admiralty. Libel in rem by Leslie M. Wilson against the motorboat Charles A. Day. Decree for libelant for part of the amount claimed.

Nathan W. Thompson, of Portland, Me., for libelant.
Richard E. Harvey, of Portland, Me., for libelee.

HALE, District Judge. This suit in rem is brought to enforce a lien for repairs upon the motorboat Charles A. Day, to render her seaworthy. Olie Christianson, the present owner of the motorboat, appears as claimant. His proctor urges: First, that it has not been proven that Wilson ever performed any carpenter work on the

vessel; second, that, if he did carpenter work, or any other kind of work, upon her, it was performed under a contract with the owner, J. C. Hunt, and that he was to be paid out of the profits that the vessel hoped to make.

[1] I. The proofs show that, at the time the alleged repairs were furnished, Hunt owned the motorboat; that he was heavily in debt to Christianson, the claimant, who sued him; that a settlement was finally made by Hunt giving Christianson a bill of sale of the boat; that the boat needed repairs to make her seaworthy.

The libelant certifies that on the dates named in his account he worked on the vessel. He charges for his services a price which he says he had been receiving at the shipyard. He had been engaged in fishing, but claims to be a second-class carpenter. The man Stanton corroborates the libelant to some extent. Davidson, the shipbuilder, and Hunt, both contradict him upon certain matters.

I am satisfied that the libelant did some carpenter work on the boat to repair her. I am not satisfied, by the proofs, that he did all the work claimed by him, or that he should receive the full price charged. As a result of all the testimony, I allow him about one-third of his claim. I think the bill must be cut down to $50.

[2] II. But the claimant says, further, that the libelant has no lien on the vessel; that he did the work with the understanding that he was to be paid out of the profits which the boat hoped to make in the fishing business.

The Act of Congress of June 23, 1910 (Comp. St. § 7783), provides:

"Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Under the above act, any person furnishing repairs or supplies to a vessel, foreign or domestic, has a maritime lien upon her, and need not allege or prove that credit was given to the vessel. Ely v. Murray & Tregurtha Co., 200 Fed. 368, 118 C. C. A. 520; The Ha Ha (D. C.) 195 Fed. 1013.

It is interesting to examine the conditions which led up to the act of June, 1910. Prior to the act, the presumption of the law was that repairs or supplies furnished a ship in a foreign port, at the request of the captain, were made upon the credit of the ship, as well as upon that of her owners. It was not necessary to the lien that there should be any stipulation for credit to be given on her account. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; The Vigilant, 151 Fed. 747, 81 C. C. A. 371; The Iris, 100 Fed. 104, 40 C. C. A. 301. It was held, too, by many federal courts, that state statutes may create a valid lien on the vessel for a debt due on account of repairs done at her home port, whether or not the repairs were made on the credit of the vessel. In The Ha Ha, supra, Judge Toulmin, of the District Court of Alabama, has referred to certain conflicts in regard

to the old law which came to the attention of Congress, and led to the passage of the act of 1910, whereby all state statutes were superseded.

[3] In the case at bar the claimant contends, that the testimony of the libelant himself defeats his claim for a lien, by showing an agreement that he was to be paid out of his share in certain fishing trips, and that the libelant expected to get his pay from his share in whatever the boat earned, if it earned anything.

I cannot agree with this contention. The proofs do not show a waiver of the lien which exists by virtue of this statute. In order to defeat such lien, there should be clear affirmative testimony. I cannot find such testimony in the record. I think the libelant should not be deprived of his lien upon the motorboat for the sum which I allow him for his services in repair of the boat. My opinion is that the libelant is entitled to a decree of $50.

Such decree may be presented. The libelant recovers his costs.