## THE SNETIND.

(District Court, D. Maine. November 1, 1921.)

No. 660.

1. **Subrogation ☞23(7)—One paying vessel's bills becomes subrogated to claims.**

Where one, at the request of the master of a vessel, advances money to pay the crew and to pay accounts against the vessel for labor and supplies, when, if the money had not been advanced, the parties paid would have enforced liens on the vessel, and the one advancing the money is only partly repaid by the vessel, he becomes subrogated to the rights of the lienors, and is in the same position as the party actually furnishing the labor, materials, or supplies.

2. **Maritime liens ☞17—Statute changes method of proof.**

Comp. St. §§ 7783, 7784, giving a lien to one furnishing repairs or supplies to a vessel upon authority of the owners, and providing that "it shall not be necessary to allege or prove that credit was given to the vessel," does not change the general maritime law, but only the method of proof.

3. **Maritime liens ☞2—For supplies furnished in foreign country, libelants may invoke law of forum.**

As to their claims for moneys advanced to pay the crew of an American vessel in an English port and repairs and supplies there furnished at the master's request, the libelants could, in enforcing their rights under the general maritime law, invoke the law of the forum, Comp. St. §§ 7783, 7784, where the law of England was not pleaded or proven, for, by sending his vessel into an English port, the American owner is deemed to give the master authority to bind the vessel, not under the English law, but under the American law, or, in other words, the law of the flag which floats over the vessel.

4. **Admiralty ☞25—Amendment denying jurisdiction because of receivership not allowed as too late.**

Where libel for advances, repairs, and supplies was filed in July, and the answer thereto was filed the following October, containing a general denial and admitting the court's jurisdiction as alleged in the libel, and bond was given releasing the vessel, the court would not allow, at the trial more than a year later, after all the evidence had been taken, an amendment denying the jurisdiction of the court, and alleging that, at the time of the seizure of the vessel, she was under the jurisdiction of a receiver appointed by the federal court of another district, that the libel was filed after such appointment, and that the libelants did not obtain from the appointing court permission to sue, for, if the amendment had been seasonably filed, the libelants could have sought permission to sue from the appointing court, and, in any event, even if the amendment had been allowed, it would necessarily be ruled that the receiver had voluntarily waived his rights by affirming the court's jurisdiction, taking his property, and giving bond in place of the ship.

5. **Maritime liens ☞33—Interest allowed from refusal of payment.**

In libel for advances, repairs, and supplies, libelants *held* entitled to interest, not from inception of their claims, but from the time the claimant filed his answer denying the allegations of the libel and refusing to pay.

In Admiralty. Libel by Mills & Knight, Limited, and another, against the motor schooner Snetind. Decree for libelants.

Bullowa & Bullowa, of New York City, and Nathan W. Thompson, of Portland, Me., for libelants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Arthur J. Dunton, of Bath, Me., and Duncan & Mount, of New York City, for claimant.

HALE, District Judge. This action in rem is brought by two London corporations, to recover from the American motor schooner Snetind for labor and materials supplied, and advances made, to render her seaworthy, while she was lying at Charlton Buoys, in the River Thames, after having completed a voyage which left her in need of repairs. The answer made a general denial of liability.

The proofs, taken by deposition, under a commission issued by this court, directed to the American Consul at London, show as follows:

[1] The respondent vessel is a large motor schooner of American registry, and was, at the time in question, engaged in general cargo business between this country and foreign countries; Mills & Knight, Limited, a corporation of ship builders and repairers in London, during the months of January, February, and March, 1920, at the request of the master of the schooner, furnished to the schooner labor, material, and supplies; Park & Co., Limited, a ship broker and ship's agent, advanced money to pay for certain materials and supplies used on the schooner; the schooner was then lying at Charlton Buoys, in the Thames river, in an unseaworthy condition, due to a rough passage on her trip across the ocean; the libelants acted solely upon the request of the master, who was unknown to either of them, and who applied to Mills & Knight, Limited, stating that the schooner was in need of a new anchor, 90 fathoms of cable, a new band for rigging, a new chain plate, new oil tank, and other material; these were installed under the captain's supervision; and, when the work was complete, an itemized account for same was presented to the master, who, in the presence of an agent of the libelant corporation, approved and signed the account, as is shown by the receipted accounts attached to the deposition; the master of the schooner applied also to Park & Co., Limited, representing the schooner to be in need of money to pay off the crew, and to pay for the new equipment necessary to make the vessel seaworthy; upon the request of the master, the money was advanced to pay the crew, and to pay accounts against the vessel for labor and supplies; stevedores were also furnished by it; and no bill was paid by it unless upon the sanction of the master; it appearing that, if the money had not been paid by Park & Co., Limited, parties to whom the money was paid by this corporation would have enforced liens on the vessel; the bills having been paid by this libelant to prevent liens attaching, and having been repaid in part only by the vessel, the libelant became subrogated to the rights of the lienors, and is in the same position as the party who actually furnished the labor, materials, or supplies. The Puritan (D. C.) 258 Fed. 271; The Emma B (D. C.) 162 Fed. 966, 970; The Underwriter, 25 L. T. (N. S.) 279.

The proofs sustain the allegation that the supplies were furnished the ship, and that the advances were made, as alleged in the libel; and that these supplies and advances were made upon the request of the master who was the proper agent to bind the vessel. The bills themselves are produced as exhibits and are signed and approved by the

master who acknowledges receipt of the articles. The evidence shows that the vessel had a rough passage and had lost her necessary gear; that she needed the anchor, lines, chains, repairs, and towage furnished; and that she needed the advances made. The master is not made a witness, and no denial is made of the testimony taken by the libelant.

The court must come to the conclusion that the supplies, repairs, and advances were made and delivered to the vessel, in a foreign port, at the request of the master, and that they were necessary in order to make the schooner seaworthy. The amounts of the claims proved are as follows:

The amount proved by Park & Co., Limited, is £1226 7s. and 5p. The amount proved by Mills & Knight, Ltd., is £534 9s. and 6p. The rate of exchange to-day fixes the value of the English pound at $3.93. The proven claim of Park & Co., Limited, therefore, in United States money, is $4,819.64, and the proven claim of Mills & Knight, Limited, in United States money, is $2,100.49.

[2] 1. The libelants allege a lien upon the schooner for these supplies, repairs, and advances which I have found to have been furnished to the vessel in a foreign port.

Do the proofs sustain the alleged lien?

The Act of Congress of the United States of June 23, 1910 (Compiled Statutes 1916, § 7783), provides:

"Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel. (36 Stat. 604.)"

The following section (7784) provides:

"The following persons shall be presumed to have authority from the owner or owners to procure repairs, supplies, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel. (36 Stat. 604.)"

Previous to the passage of this statute, whoever furnished repairs or supplies to a vessel, on the authority of the owners, had a lien therefor under the general maritime law, on proof that credit was given to the vessel. The Alligator, 161 Fed. 37, 39, 88 C. C. A. 201. It will be seen that the present statute provides that "it shall not be necessary to allege or prove that credit was given to the vessel." Under this act, then, any person furnishing repairs or supplies to a vessel, foreign or domestic, upon the order of the owner, has a maritime lien upon her, and need not allege or prove that credit was given to the vessel. The Charles A. Day (D. C.) 265 Fed. 422, 423; Ely v. Murray & Tregurtha Co., 200 Fed. 368, 118 C. C. A. 520; The Ha Ha (D. C.) 195 Fed. 1013.

It was clearly the intention of Congress not to change the general maritime law, but only to change the method of proof. In Piedmont & Georges Creek Coal Co., v. Seaboard Fisheries Co., Clmt., 254 U. S. 1, 12, 41 Sup. Ct. 1, 4 (65 L. Ed. ——), in speaking for the Supreme Court, Mr. Justice Brandeis said:

"The act relieves the libelant of the burden of proving that credit was given to the ship when necessaries are furnished to her upon order of the owner, but it in no way lessens the materialman's burden of proving that the supplies in question were furnished to her by him upon order of the owner or of some one acting by his authority."

[3] In the case at bar the supplies and advances were made in England. At the hearing, the claimant contended that the rights of the libelant were governed by the general maritime law, and that this law did not allow such lien. In a brief, filed since then, the claimant goes further and claims that the libelants' rights are solely under British law, and that, not having pleaded or proven British law, the libel should be dismissed. I cannot sustain this contention. The rights of the libelant to have a lien on the vessel were governed by the general maritime law which has not been altered by the lien statute. The statute gives no rights not already given under the maritime law. It merely shifts the burden of proof necessary to establish a lien. It altered the procedure necessary to establish a lien, which the maritime law had already given.

In enforcing their rights, under the general maritime law, the libelants clearly may invoke the law of the forum, the law of England not having been pleaded or proven. The theory of the law is that, in sending his vessel into an English port, the American owner gives the master certain authority to bind the vessel, not under the English law, but under the American law, in other words, the law of the flag which floats over the vessel. The Scotland, 105 U. S. 24, 26 L. Ed. 1001.

In Pope v. Nickerson et al., Fed. Cas. No. 11274, Mr. Justice Story, in speaking for the United States Circuit Court of Appeals, said:

"If the ship is owned and navigated under the flag of a foreign country, the authority of the master to contract for, and to bind the owners, must be measured by the laws of that country, unless he is held out to persons in other countries, as possessing a more enlarged authority."

And further:

"Any other rule would subject the principals to the most alarming responsibility, and be inconsistent with that just comity and public convenience, which lies at the foundation of international private law." Liverpool & Great Western Steam Co. v. Phenix Insurance Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; The Kaiser Wilhelm II (D. C.) 230 Fed. 717.

In Cuba Railroad Co. v. Crosby, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40, a common-law action for personal injuries, the Supreme Court held that the law of the forum did not apply, because the plaintiffs and defendants were foreigners; but, in speaking for the court, Mr. Justice Holmes confined his ruling to the questions of fact involved in that case, and said:

"It may be that in dealing with *rudimentary contracts* or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person or conversion of goods, courts would assume a liability to exist if nothing to the contrary appeared."

In the case at bar, the court is clearly dealing with a promise of payment of money for goods and services; and there can be no question but that the lex fori should be enforced, no other law having been pleaded or proven.

In The Kongsli (D. C.) 252 Fed. 267, 271, this court had occasion to pass upon a similar question, and said:

"In the case at bar the libelant has a lien given by the general maritime law of the United States. Such lien may be enforced by an action in rem. This right is given by the laws of the United States; and the laws of the United States are supreme in our courts over French law. There appears, indeed, to be no reason in French law, under the principle of reciprocity for dismissing the libel and leaving the question to the French courts, in a case which has not already proceeded to judgment. Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95. The maritime usages of foreign countries are not obligatory upon the courts of the United States, and will not be respected as authority, except so far as they are consonant with the well-settled opinions of English and American jurisprudence. This is well settled by the Supreme Court. The Elfrida, 172 U. S. 186, 19 Sup. Ct. 146, 43 L. Ed. 413."

I cited, also, the Bold Buccleugh, 7 Moore (P. C.) 267, 19 L. T. 235; The Maggie Hammond, 9 Wall. 435, 461, 19 L. Ed. 772; The John G. Stevens, 170 U. S. 113, 127, 18 Sup. Ct. 544, 42 L. Ed. 969.

It is the prevailing doctrine of our maritime courts that the laws of the United States are supreme in our courts over foreign law; that, indeed, the pendency of an action in a foreign court is no bar to a suit in the federal court; but, if a foreign law has been invoked, and a definite judgment has been rendered, in a foreign court, it is, of course, otherwise. In the case before me the libelants have, in my opinion, shown themselves entitled to a lien under the general maritime law. The proper law by which such a lien in rem is enforced is the lex fori. They have proceeded under that law, and I am of the opinion that their proofs sustain the alleged lien.

[4] 2. At the trial of the cause the claimant offered to amend his libel denying the jurisdiction of the court and setting up that, at the time of the seizure of the vessel, she was in the possession of a receiver appointed by the order of the United States District Court for the Southern District of New York; that the alleged contract, upon which the suit was founded, arose without the United States, prior to the appointment of the receiver; that the libel was filed after such appointment; that the order appointing the receiver contained the usual injunction as to suits against the receiver and interference with property in his possession; and the libelant did not obtain permission from the appointing court to bring suit.

This libel was filed on July 2, 1920. The answer, filed October 21, 1920, made a general denial of the allegations of the libel, and admitted the jurisdiction of the court as alleged in the ninth article of the libel. A bond was given releasing the vessel, and this bond now takes the place of the ship. At the time of the trial, more than a year later, after all the evidence had been taken out, this amendment was presented. Admiralty courts are most lenient in allowing amendment to pleadings in all matters of form and in all matters of substance where the justice of the case requires it, and where the amendments conform with the proof. If this amendment had been seasonably filed before the proofs were taken in the case, the libelants could have gone to the court appointing the receiver and asked for permission to bring the suit. Clearly the justice of the case should not permit a receiver to lie in wait until

the res in which the libelants had an actual property right has passed beyond the control of the libelants, and then present an amendment to his answer which deprives the libelants of their security, taken in place of the vessel. Moran v. Sturges, 154 U. S. 256, 285, 14 Sup. Ct. 1019, 38 L. Ed. 981. The court has always had jurisdiction of the subject-matter; and it would be a gross injustice to permit the claimant to invoke the rule that the question of jurisdiction may be presented at any time before judgment, when the claimant himself has so acted as to deprive himself of this privilege.

In The Santa Clara (D. C.) 206 Fed. 179, the District Court in New York held that, where, in a suit in rem by a seaman to recover for personal injuries, the claimants intend to rely upon the fact that the ship belongs to a foreign country, under whose laws an action in rem for such injuries cannot be maintained, notice of such defense must be given in the pleadings. In passing upon the case, Judge Ward said:

"The answer put in issue only the allegations of the libel, and set up an affirmative defense that the libelant's injuries were due to his own negligence or that of his fellow servants, and not to any fault or negligence of the steamer or her owners.

"At the trial the claimant asked leave to amend the answer by alleging that the steamer was British, with a view of proving that under the British law the libelant was entitled to no lien, and therefore could not maintain this action. The Lamington (D. C.) 87 Fed. 752. Neither the claim, nor the stipulation, nor the answer gave any intimation that the steamer was British, or that the British law would be relied on to defeat the libelant because of his method of procedure. Such pleading would deceive many, if not most, of the practitioners at this bar, and might leave an ignorant seaman with a good case; without remedy after the steamer had left the jurisdiction. When a shipowner intends to rely upon such a defense, it is but fair to notify the opposite party of it in the pleading, and not to lead the unwary into a trap. Therefore I refuse to allow any amendment, and will dispose of the case on the issues actually joined."

In the case at bar, the receivership proceedings were started in the District Court of New York, and the ship was in the District of Maine. Previous to her arrival here, she had been in a foreign country. There was clearly no reason why this amendment should be interposed in a maritime suit of this character at the trial of the case and long after the pleadings had been filed. I, therefore, refused to allow the amendment, and proceeded to dispose of the case on the issues actually joined.

It must further be said that, even if the amendment had been allowed, I should have been compelled to hold that the receiver had voluntarily waived his rights, by affirming the jurisdiction of the court, taking his property, and giving bond in place of the ship. After doing so, he cannot turn around and deny the jurisdiction at a time when the court can no longer administer relief in the case. Trocon et al., Appellee, v. Scott City Railway Co., Appellants, 91 Kan. 887, 139 Pac. 357; The Abbey, Fed. Cas. No. 14.

[5] 3. The libelants, having proven the allegations of their libel, and having established their lien, are entitled to judgment upon the amounts of their claims.

I do not think they should recover interest from the inception of the claims; but I see no reason why they should not recover interest since

the claimant filed his answer denying the allegations of the libel and refusing to pay.

I will, therefore, allow interest since October 21, 1920. A decree may be presented in favor of the libelant Messrs. Park & Co., Limited, in the sum of $5,116.81, and in favor of the libelant Mills & Knight, Limited, in the sum of $2,229.99, with costs.