COMMONWEALTH ROOFING CO. v. NORTH AMERICAN TRUST CO. et al.

(Circuit Court of Appeals, First Circuit. February 28, 1905.)

No. 562.

1. RECEIVERS—EFFECT OF APPOINTMENT—RIGHTS OF BUILDING CONTRACTOR.

While the appointment of a receiver for the property of a corporation may entitle one engaged in the performance of a building contract with the corporation to treat such contract as abandoned as of the date of the receiver's appointment, he is also entitled to a reasonable time before electing to do so for the purpose of ascertaining what may be done by the parties in interest or the receiver with respect to completion of the work.

2. SAME—SCOPE OF RECEIVERSHIP—INTERESTS PROTECTED.

When a receiver of specific property has been appointed by a court of competent jurisdiction, his appointment is for the benefit of all concerned, and the status of the property and all interests are preserved as of the date of the appointment, subject to a disposition of all the same by the chancellor on due and reasonable application in respect thereto, or by subsequent proceedings in the event that the receiver is discharged, or of other contingencies which result in a dismissal or restoration of the property.

3. SAME—EFFECT ON MECHANICS' LIENS—TIME FOR ENFORCEMENT.

Pub. St. N. H. 1901, c. 141, provides for mechanics' liens, which shall continue for 90 days after the services are performed or the materials are furnished, and by section 17 that "any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues." A contractor for the furnishing of labor and materials in the construction of buildings for a corporation had completed one contract, and was engaged in the performance of another, when a receiver for the property was appointed by a federal court in a suit to foreclose a mortgage thereon. The order authorized the receiver to elect within six months whether to affirm, ratify, or continue any existing contract.

It was thought that the corporation would be able to discharge the receivership, and complete its buildings, and go on with its business, and efforts were made to that end, but were unsuccessful, and the work was not resumed. Thereafter, and about four months after the appointment of the receiver, the contractor, by leave of the court, attached the property, and submitted its claims for liens to the court in the receivership suit. *Held,* that it did not lose its right to liens under either contract by its failure to attach within the statutory 90 days, the intervention of the receivership having rendered such attachments ineffective and unnecessary; and that the court appointing the receiver, the application to it having been seasonable, was bound on equitable principles to preserve and protect the contractor's liens without regard to proceedings elsewhere, having drawn to itself the administration of the property.

Appeal from the Circuit Court of the United States for the District of New Hampshire.

Edo E. Mercelis, for appellant.

Charles E. Hotchkiss (John Kivel, Julien T. Davies, and Charles K. Allen, on the brief), for the North American Trust Company and receivers.

Before COLT and PUTNAM, Circuit Judges, and LOWELL, District Judge.

PUTNAM, Circuit Judge. This case involves the construction, application, and effect of the Public Statutes of New Hampshire of 1901, c. 141, §§ 10, 16, and 17, as follows:

"Sec. 10. If a person shall by himself or others, perform labor or furnish materials to the amount of fifteen dollars or more, for erecting, altering or repairing a house or other building or appurtenances, by virtue of a contract with the owner thereof, he shall have a lien thereon, and on any right of the owner to the lot of land on which the house, building or appurtenances stand."

"Sec. 16. The lien created by sections 10, 11, 12, 13 and 14 of this chapter, shall continue for ninety days after the services are performed or the materials or supplies are furnished, unless payment thereof is previously made, and shall take precedence of all prior claims except liens on account of taxes.

"Sec. 17. Any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues, the writ and return thereon distinctly expressing that purpose, and such attachment shall have precedence of all other attachments made after such lien accrued, unless founded on a prior lien."

On April 20, 1903, the North American Trust Company filed in the Circuit Court for the District of New Hampshire against the White Mountain Paper Company a bill to foreclose a mortgage given by the paper company to the trust company, and duly recorded before the transactions with the Commonwealth Roofing Company involved in this appeal. It is not necessary that we should undertake to determine for all purposes the full breadth of the mortgage, because it is not questioned that it covered the land and buildings in issue here. Subsequent to the filing of the bill, though on the same day, the Circuit Court appointed a receiver in the way customary in federal courts in foreclosure suits. The appellees raise some question with reference to the extent of this order, but this is immaterial, because the order certainly barred any proceeding against the land and buildings in any court, except after consent given by the chancellor in the foreclosure suit.

The Commonwealth Roofing Company claims liens, under the statute which we have quoted, for labor and materials furnished in the construction of buildings on the mortgaged land under two contracts with the White Mountain Paper Company. One of these contracts had been completed on April 3, 1903; the other had been only partially completed when the receiver was appointed. It cannot be questioned that the order appointing the receiver so far put into his control the assets of the White Mountain Paper Company as to disenable it from making payments on the contracts and from proceeding on the one which remained uncompleted. But the court, in the order appointing the receiver, provided that nothing contained therein should be construed as a ratification, affirmance, or continuance of any contract made by the paper company, unless the receiver should expressly elect to make such affirmance, ratification, or continuance, and that the receiver should be entitled to six months from the date of the order to exercise such election as to any contract which continued in effect for six months or more. This emphasized the fact, which is easily inferred from the record, as we will see, that all parties hoped, at least for the time being, that the paper company would be able to adjust its affairs and resume its work. It cannot be questioned that under the settled rules the roofing company became entitled to treat the contract as abandoned as of the date of the appointment of the receiver, but, of course, entitled to delay a reasonable time before declaring an abandonment on its part, for the purpose of ascertaining what would ultimately be determined on as to the resumption of work. Florence Mining Company v. Brown, 124 U. S. 385, 8 Sup. Ct. 531, 31 L. Ed. 424; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Jones on Liens (1888) vol. 2, § 1438. Moreover, the case is the usual one: a corporation, whose transactions are large and involved, with reference to which, on the appointment of a receiver, coming, as such appointments often do, suddenly and unexpectedly, all parties concerned require time to ascertain their various positions, and to determine whether they must resort to legal remedies, and, if yes, what they should be. Under the circumstances the roofing company cannot be charged with laches according to the rules of equity, in that it did not proceed immediately, or within the short space of 90 days named in the statute, to enforce its liens under either of its contracts.

It should be observed that the statute which we have quoted makes no requirement, as do the statutes of some states, to the effect that giving or filing a notice is a condition precedent to the creation of a lien. What might be the effect of such a requirement we have no occasion to consider. It was also determined in Pike v. Scott, 60 N. H. 469, that the statutory lien is not so limited that, in the case of a continuing contract, the 90 days run de die in diem from the time of each item of labor or material, and that they run from the time the last materials or the last labor were furnished or done. We also think that we are justified by various expressions in this opinion and in the statute in holding that at the time the order appointing the receiver was made the roofing company had existing liens for the labor and materials done or furnished prior thereto under each

contract. Its liens were at that time not merely inchoate, but complete, and attached to the property in question as then existing rights. Section 17 provides that the lien "may be secured by attachment of the property on which it exists at any time while the lien continues." Whether this word "may" is to be construed as permissive only, leaving open to the creditor other methods of enforcing liens, or whether it is absolutely restrictive, we have no occasion to determine. The result of it all is that, when the order appointing the receiver was entered, the roofing company had complete liens, though they might afterwards be lost by a failure to comply with the statute. We thus describe the precise nature of its liens without intending to express any opinion with reference to inchoate liens, as we have no occasion at present to do so.

On July 1, 1903, the receiver notified the roofing company that money could not be raised, and the plant would not be completed. Thereafterwards, on August 25, 1903, the roofing company petitioned the Circuit Court for, and obtained, leave to attach for the purpose of securing its liens under the two contracts. It also asked to be allowed to intervene in the foreclosure litigation so far as might be necessary for their protection and enforcement. Leave to attach having been granted, on the same day it sued out its writ and did attach as provided by the statute. Referring to the facts and considerations already stated, it cannot be questioned that under the circumstances it exercised its option to abandon the contract within a reasonable time in the view of the chancery courts and their rules as to laches; and the only point made is that the statutory 90 days run from the 4th day of April, when the last materials and labor were furnished or done, and that the statutory period is controlling, notwithstanding the intervening appointment of a receiver.

Afterwards, on January, 4, 1904, pursuant to the petition of the Commonwealth Roofing Company for leave to intervene to which we have already referred, it filed an answer in the pending proceedings, claiming its liens, and praying that the Circuit Court should determine the priority thereof, and for such other and further relief as to that court should seem just. Thereupon, in accordance with the usual practice under such circumstances, by which the court appointing a receiver may assume jurisdiction to inquire about and determine all liens and priorities, the Circuit Court appointed a master to ascertain what liens, if any, existed, and the extent and amount thereof, and particularly to hear and determine the material questions raised by the roofing company. The master duly made a report, to which no exceptions were taken by any party other than the roofing company. Its exceptions, so far as they are substantial, relate to questions of law; so that, for all further facts which we need, we assume those stated by the master to have been correctly found. He gives the details of the contracts to which we have already referred. He also states the material facts in reference to the mortgage then in process of foreclosure. He refers to the fact that the work at the plant was stopped in December, 1902, on account of the weather and the incomplete condition of the building; also to the fact that nevertheless materials which were intended to

enter into the construction of the buildings, as called for by the contracts, were delivered on the premises as late as April 4, 1903. He states that in May negotiations were pending to such an extent that the prospect was that the affairs of the corporation would soon be adjusted, and funds provided to pay the bills and complete its mill; that on June 15, 1903, the appellant learned that the parties seeking to put the paper company on its feet were still looking over its property with the expectation of going on and completing the plant, but that on July 1, 1903, as already stated, the receiver notified the roofing company that the necessary money could not be raised, and that the plant would not be completed. He ruled as a matter of law that it was necessary, in order to preserve the liens, that attachments should have been made within the statutory 90 days after the furnishing of the last material, which, as we have said, was on April 4th; and that the appointment of the receiver did not do away with this necessity.

The master then finds the amount due on the completed contract, and the amount remaining unpaid on the uncompleted contract at the time the receiver was appointed, the details of which we need not state; and he rules, in effect, that the liens were lost. The exceptions of the roofing company to the master's report were duly heard by the court and disallowed, and the report was confirmed, and a decree entered accordingly, whereupon this appeal was seasonably taken.

In regard to the uncompleted contract, there has been some discussion before us as to the probable effect of the negotiations in enlarging, even at the common law, the statutory period, and also as to the question whether that period might not be held to run from the time when a suit at law could have been commenced on the contract for the recovery of the amount finally to come due thereon. Reference has been made in this connection to Freeto v. Houghton, 58 N. H. 100, and Kendall v. Pickard, 67 N. H. 470, 473, 32 Atl. 763, which contain some observations favorable to the roofing company in these particulars, although not decisive. In the view we take of this appeal, it is not necessary to consider these topics.

We have already said there were existing, complete liens on April 20, 1903, when the receiver was appointed. As we have further said, whatever may have been the extent of the authority given the receiver, it expressly covered the property against which these liens are claimed; and therefore, from the time of his appointment, any attempt to proceed against that property for their effectual enforcement would have been invalid, and a contempt of the Circuit Court, unless with the consent of that court. Moreover, even if that court had, within the statutory 90 days, given leave to proceed by a suit at common law, as provided by statute, it would have held its hand on the judgment thus obtained, and have permitted the liquidation of it only in such manner as it might itself direct when the judgment was obtained. Furthermore, as was done in this case, notwithstanding leave had been given to attach, and either with or without such leave, the Circuit Court, on the application of the lienor, or on the application of any other party interested in the litigation, might have

proceeded to investigate and adjudicate with reference to all the rights of the lienor, and to give such remedy as the equity of the case might advise. In other words, by appointing the receiver of the property upon which the lien attached, the Circuit Court assumed the control thereof and of the lienor, and stood in its path; and, having assumed such control, it also, on settled principles, assumed the obligation to do equity, and to protect the lienor so far as it had any just rights in the premises. Therefore, on the broad rules of equity, the chancellor, having thus interposed his authority, was bound, on the application of the lienor, as on the applications of other parties in interest, to consider the question of its rights, and to preserve the same, without regard to proceedings elsewhere, which the court might or might not approve, and without regard to any formalities, required by statute or the common law, subsequent to the order appointing the receiver, which also it might or might not permit. It is in consequence of this that we find in the authorities such general expressions as the following:

"The appointment of a receiver does not divest the property of prior existing liens, but affects them only in the manner and time of their enforcement." "While the property is in the possession of the receiver, the right to enforce the lien is suspended, because the property is in the custody and control of the court." Beach on Receivers (2d Ed. 1897) 194.

"Wherever property subject to a lien has been brought within the domain of a court of equity, and a receiver of that property is appointed, whatever rents and profits the receiver gets into his hands will be dedicated, along with the corpus of the fund, to the satisfaction of the lien, after paying taxes, interest, and the like burdens." Id. 318.

In considering these broad propositions, we pass by the class of cases where an appointment constituted nominally a receivership, but really a trusteeship for winding up the assets of a corporation, partnership, or joint-stock company, so that, necessarily, the court must dispose of all the assets, and marshal them according to existing liens, and where, moreover, rulings were specifically made in view of that fact. We, however, find support for our positions in an opinion rendered in behalf of the Supreme Court, which evidently has relation to receivers for whatever purpose appointed. In Davis v. Gray, 16 Wall. 203, 217, 218, 21 L. Ed. 447, Mr. Justice Swayne, speaking in behalf of the court regarding a receiver, says:

"The court will not allow him to be sued touching the property in his charge, nor for any malfeasance as to parties, or others, without its consent; nor will it permit his possession to be disturbed by force, nor violence to be offered to his person while in the discharge of his official duties."

He also says that the receiver is "required to take possession of property as directed, because it is deemed more for the interests of justice that he should do so than that the property should be in the possession of either of the parties to the litigation"; and that "he is not appointed for the benefit of either of the parties, but of all concerned." Again, he observes:

"A receiver is appointed upon a principle of justice for the benefit of all concerned. Every kind of property of such a nature that, if legal, it might be taken in execution, may, if equitable, be put into his possession. Hence the appointment has been said to be an equitable execution."

In the present case, notwithstanding leave had been given to proceed by writ of attachment, the Circuit Court, as we have already said, properly took jurisdiction of, and passed upon, the claims of the appellant. How can it be deemed necessary that, in order that a lien existing when a receiver is appointed should be satisfied, proceedings should be taken by writ of attachment, when, after all, the court which appoints the receiver has the power to treat such proceedings as futile? This question is answered by the broad rule which we have stated. The just conclusion is that, when a receiver of specific property has been appointed by a court having competent jurisdiction, the status of the property and all interests are preserved as of the date of the appointment, subject to a disposition of all the same by the chancellor on due and seasonable application in reference thereto. Mr. Justice Swayne's expression to the effect that such an appointment has been said to be an equitable execution is of peculiar force in this respect.

It is to be observed at this point, however, that our propositions do not go to the extent of maintaining that a court which has appointed a merely interlocutory receiver, as was the case here, is always required to adjudicate finally questions of liens, and provide for their satisfaction. This, in view of the interlocutory nature of the proceedings, the court may or may not do, according to the equities and necessities of the case; but, in the event the receiver is discharged, or in the event of other contingencies which render it suitable that the court should not go through to the conclusion, it is bound in some way, on due application, to preserve the essential rights of the parties as they existed when the receiver was appointed.

It is also to be observed that, while it follows from what we have said that the action of the chancellor in regard to rights existing at the time a receiver is appointed, including statutory liens, is not positively restricted by any specific provisions of the common law or the statutes with reference to methods and times of procedure, yet in this as in all other matters he must regard the rules of laches peculiar to equity. Unless protected by some general or special order made in discharging property from the custody of receivers, liens and other privileges may then be lost. Also, while the property remains under the control of the chancellor, unless relief is prayed for promptly, the progress of the estate may have so developed that an equitable estoppel will have arisen. But in the present case, under the circumstances we have explained, no claim can be made that any party has suffered by the delay, or that there was any delay as to either contract which was unreasonable. Therefore we conclude that under all the circumstances relief should have been granted to the Commonwealth Roofing Company, and that, as to this, the essential circumstances as to both contracts are the same.

Various incidental questions, however, arise, which are reserved for further consideration by the Circuit Court, and are not to be regarded as prejudiced by our judgment on this appeal. Among these is the effect of the provision of the uncompleted contract with reference to payment in bonds of a percentage of the amount coming due under it, if there is such a provision. Also, there may arise

a question whether either lien is in gross against all the buildings referred to in the record, or whether the amounts owing for supplies and labor are to be distributed in due proportion among them, and, if yes, on what rules, or in what method. Also, there stands for consideration the peculiar phraseology of the New Hampshire statute, found in the tenth section thereof, which may, perhaps, be so construed as to give the Commonwealth Roofing Company liens on only the right of redemption of the White Mountain Paper Company as to the mere land, but to give it liens superior to the mortgage on some or all of the buildings. Also, all questions of interest and costs, and of the methods of procedure to be adopted by the chancellor to enforce the liens, remain to be disposed of. On all these we express no opinion, our conclusion being limited to the single point that the liens have not been lost, but should be enforced by the Circuit Court, notwithstanding any lack of compliance with the statute with reference to the time or method of procedure.

We should, perhaps, observe, in conclusion, that decisions have been pressed on our consideration, pro and con, which arose in connection with proceedings under the bankruptcy statutes of the United States. These decisions are conflicting, and not authoritative for Courts of Appeals. They cannot stand in the way of the fundamental rules of equity which we have stated. Moreover, there may be a broad distinction arising out of the fact that, while property in the hands of a receiver is in custodia legis, the same is not ordinarily true in a proper sense with reference to the assets of a bankrupt estate. As to such assets, the ordinary rights of litigation are usually preserved, and parties having claims of any kind may govern themselves accordingly.

The decree of the Circuit Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with our opinion passed down this day, and neither party recovers costs of appeal.