BERWIND-WHITE COAL MINING CO. v. METROPOLITAN S. S. CO.

AMERICAN TRUST CO. v. SAME.

(Circuit Court, D. Maine. December 26, 1908.)

No. 625.

1. MARITIME LIENS (§ 19*)—STATUTORY LIENS—VALIDITY AND ENFORCEMENT.
    Act N. J. March 20, 1857 (P. L. p. 382), as amended by Act April 24, 1884
    (P. L. p. 248), which provides that "whenever a debt shall be contracted
    by the master, owner, agent or consignee of any ship or vessel within this
    state * *. * on account of any work done or materials or articles fur-
    nished in this state for or towards the building, repairing, fitting, fur-
    nishing or equipping such ship or vessel * * * such debt shall be a
    lien upon such ship or vessel, her tackle, apparel, and furniture, and con-
    tinue to be a lien on the same until paid, and shall be preferred to all
    other liens thereon, except mariner's wages," applies to vessels owned out-
    side of the state, but the unfinished hulls of which were voluntarily
    brought therein for completion, and gives a positive lien thereon, which
    continues until the debt is paid, and which follows them into a foreign
    jurisdiction and may be enforced anywhere according to the rules of the
    chancery courts.
        [Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 19.*
        Created by state laws, see note to The Electron, 21 C. C. A. 21.]

2. MARITIME LIENS (§ 17*)—STATUTES CREATING LIENS—VALIDITY.
    The fact that such statute makes no distinction between foreign and
    domestic vessels, and as applied to the former may as to some of its pro-
    visions be in contravention of the principles of the admiralty law, does
    not render it void as to any of its provisions not so conflicting.
        [Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 17.*]

3. MARITIME LIENS (§ 19*)—WORK AND MATERIALS FURNISHED UNDER SINGLE
    CONTRACT—APPORTIONMENTS AS BETWEEN SEVERAL VESSELS.
    Where a joint contract provided that payments should be made to the
    contractor for labor and materials furnished several vessels at the actual
    cost and a percentage, with a fixed allowance for use of his machinery
    according to the amount of work done, held, that under the statutes of
    New Jersey there is no inherent difficulty in determining the amount to
    be paid for labor and materials which went into each vessel, nor in ap-
    portioning the liens accordingly.
        [Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 19.*]

4. MARITIME LIENS (§ 24*)—STATUTORY LIENS—NECESSITY OF CREDIT TO VESSEL.
    It is not essential to the validity of a lien given by a state statute on a
    vessel for labor or material furnished in its construction that the same
    should have been furnished on the credit of the vessel, where the statute
    does not in terms require it.
        [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 30; Dec.
        Dig. § 24.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. MARITIME LIENS (§ 49\*)—STATUTORY LIENS—ENFORCEMENT—LACHES.**

One furnishing labor and material for the completion of vessels intended especially to be employed during the Summer season, amounting to over $100,000, is not chargeable with laches which defeats his right to enforce a statutory lien by extending credit to the owner until the close of the first season during which the vessels were to be and were employed.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 88; Dec. Dig. § 49.\*]

**6. SHIPPING (§ 32\*)—MORTGAGES OF VESSEL—CONSTRUCTION AND OPERATION—AFTER-ACQUIRED PROPERTY CLAUSE.**

A mortgage given by a steamship company covering all the vessels it then owned and all it should afterwards acquire cannot bind after-acquired vessels as against intervening equities of strangers.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 32.\*]

**7. MARITIME LIENS (§ 74\*)—STATUTORY LIENS—REMEDIES FOR ENFORCEMENT.**

Under Act N. J. March 20, 1857 (P. L. p. 382), as amended by Act April 24, 1884 (P. L. p. 218), which gives a lien on a vessel for labor or material furnished for its construction in that state, to continue until payment, and authorizes proceedings in local tribunals for its enforcement, but without excluding other remedies, such lien may be enforced by a court of equity in another jurisdiction, which has taken possession of and is administering the property in insolvency proceedings against the owner, or in a creditors' suit.

[Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 74.\*]

In Equity. On petition of W. & A. Fletcher Company to intervene.

Harrington Putnam and Edward S. Dodge, for petitioners.
William A. Sargent and Avery F. Cushman, for American Trust Co.
Alfred H. Strickland, for Berwind-White Coal Mining Co.
Coolidge & Hight, for receivers of Metropolitan S. S. Co.

PUTNAM, Circuit Judge. This is an intervening petition seeking to have liquidated and allowed certain claims, amounting to about $140,000, which the petitioner, W. & A. Fletcher Company, maintains are secured by mechanics' liens on two steamers, the Harvard and the Yale, arising by force of the statutes of the state of New Jersey. The demands are for work and material furnished in the installation of the machinery of the two steamers as a part of their original construction. The petition as drawn also involved certain demands for labor and material furnished after the steamers were completed and pending their operation on the admiralty waters of the United States, so that such demands, if maintainable, would have been supported by admiralty liens; but, so far as these are concerned, the petition has been withdrawn, and they are not before us. Whatever there is before us is in no way of a maritime character, and represents labor and materials furnished in the state of New Jersey by the petitioner, then resident in New Jersey, upon these steamers, which were brought into New Jersey as hulls for the purpose of receiving the machinery in question here. Therefore, notwithstanding many propositions which are urged on us, all objections to the allowance of the petition, except those to which we shall particularly refer, are disposed of by settled rules as established by the Supreme Court. The objecting parties are the complainant, an unsecured creditor, who instituted the proceedings into which the pres-

ent petitioner intervened, and the holder of the mortgages to which we will hereafter refer.

The contract for the installation of the machinery in both steamers was a single one, but it provided that the work should be done at cost of both labor and materials, with certain allowances in the way of percentages and otherwise for the benefit of the contractor, the present petitioner. Consequently, there is no difficulty whatever in ascertaining precisely what benefit each steamer received under the contract, and how much of such benefit to each steamer remains unpaid for; that is, the true balance due from each steamer. Therefore, as the New Jersey statute is framed, no difficulty arises by reason of the contract being single. So far as this topic is concerned, the statute of New Jersey is in substance the same as the statutes to which the following decisions relate. As to the Maine statute, there is a conflict in the expressions used by the Supreme Judicial Court of that state, as appears by Taggard v. Buckmore, 42 Me. 77, Fuller v. Nickerson, 69 Me. 228, and Mehan v. Thompson, 71 Me. 492. This relates mainly to the question whether it is necessary to prove that the materials furnished actually went into the vessel on which the lien is claimed. The cases cited establish the proposition that, where there is a joint sale of materials, a lien cannot be maintained on any one vessel for the entire materials furnished for both vessels. There is nothing in them which is clearly inconsistent with the proposition we make, which is fully sustained, even in regard to the Maine statute, by Mr. Justice Curtis in The Kiersage, 2 Curt. 421, 425, Fed. Cas. No. 7,762. The circumstances in that case were substantially the same as they are here, but Mr. Justice Curtis found no sound reason why the lien should not be sustained as to each vessel for the materials which actually went into it. The same result was reached under the Massachusetts statute in Briggs v. A Lightboat, 7 Allen (Mass.) 287, 295; and the principle underlying these decisions and our propositions is stated in Van Stone v. Stillwell Co., 142 U. S. 128, 136, 12 Sup. Ct. 181, 183, 35 L. Ed. 961, where it is observed with reference to a lien on realty that it is not the contract which creates the lien, but "the use of the materials furnished and the work and labor expended by the contractor, whereby the building becomes a part of the freehold." The underlying equity is that the lien is supported by the fact that the labor and materials have actually gone into the property on which the lien is claimed, and increased its value. When the exact facts can be shown in reference thereto as they are shown in the present case, the equity is clear, and the lien follows the equity. We do not understand that these propositions are disputed, but we wish to put ourselves on guard in reference thereto.

The original bill in this case was filed on January 30, 1908; on February 7, 1908, interlocutory receivers were appointed on the original bill; on March 14, 1908, a cross-bill of the American Trust Company, the mortgagee, was filed by leave of court, and on the same day the receivership was extended to the cross-bill. Immediately after the bill was filed, an ancillary bill was filed in the Circuit Court for the District of Massachusetts, and ancillary orders appointing receivers entered there. When the bill was filed and the receivers were appoint-

ed, the two steamers were at South Boston in the District of Massachusetts, being out of employment and laid up for the winter. By virtue of a formal order entered after the petition for the receiver was filed, the United States marshal for the District of Massachusetts took possession of the steamers in question in behalf of the court for the purpose of protecting the same from interference. Upon the appointment of the receivers, possession of the two steamers was surrendered to them, and it has ever since been retained by them.

Thus it will appear that, when the rights of the court and its officers attached at the commencement of the present proceedings, the steamers were entirely outside the jurisdiction of the state of New Jersey, not only theoretically, but as a matter of fact; so that, if the statutes of New Jersey provided only "a privilege of arresting the vessel for the debt," to use the words of Mr. Justice Curtis, hereafter cited, it was not effectual until an attachment was made. Such a remedy is of such a nature that it could be enforced only against property situated within the jurisdiction of the courts of that state. Therefore, if the rights of the petitioner were of that character, it would follow inevitably that, as the steamers at the time the bill in equity before us was filed were laid up outside the jurisdiction of the courts of New Jersey, the petitioner had no interest which any foreign court is bound to respect. Therefore, we have to consider the nature of the lien given by the statute in question.

Aside from this question, we refer to the decision of the Circuit Court of Appeals for this circuit in Commonwealth Roofing Co. v. North American Trust Co., 135 Fed. 984, 988, and 989, 68 C. C. A. 418, passed down on February 28, 1905, as establishing the proposition that if, at the time the bills before us were filed, there was resting on those steamers or either of them an inchoate lien of any character, it is the duty of this court to give it fruition.

Returning, therefore, to the investigation of the character of the lien in this case, the first section of the statute on which the petitioner relies, approved March 20, 1857 (P. L. p. 382), as amended by the act approved April 24, 1884 (P. L. p. 248), reads as follows:

"1. Be it enacted by the Senate and General Assembly of the State of New Jersey, that whenever a debt shall be contracted by the master, owner, agent, or consignee of any ship or vessel, within this state, for either of the following purposes:

"(1) On account of any work done, or materials or articles furnished in this state, for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel;

"(2) For such supplies, provisions and stores furnished within this state for the use of such ship or vessel at the time when the same were furnished;

"(3) On account of the towing of such ship or vessel, the wharfage of such ship or vessel, and the expenses of keeping such ship or vessel in port, including expenses incurred in taking care of and employing persons to watch such ship or vessel; such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture, and continue to be a lien on the same until paid, and shall be preferred to all other liens thereon, except mariner's wages."

This is the entirety of the first section of the act to which we refer. Its phraseology is positive. It gives a positive lien on property which was within the jurisdiction of the state of New Jersey for labor and

materials there furnished. This lien continues until the debt is paid. Did the statute thus vest an interest in behalf of the petitioner in the two vessels in question which followed them wherever they might go, even though into a foreign jurisdiction?

We perceive no question of the power of the Legislature of New Jersey to regulate the title of property brought within its jurisdiction, and, as an incident thereto, to impose a lien which will attach with the same effect as though an expressly agreed lien had been established by the parties involved. The authority of Legislatures over personal assets which have a locality elsewhere than at the domicile of the owner is effectively illustrated by the late decisions of the Supreme Court asserting the power of local taxation with reference thereto, even, under exceptional circumstances, with reference to vessels engaged in interstate commerce. New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; Old Dominion Steamship Company v. Virginia, 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059; Union Refrigerator Company v. Kentucky, 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150; Ayer & Lord Company v. Kentucky, 202 U. S. 409, 26 Sup. Ct. 679, 50 L. Ed. 1082. It is also illustrated with reference to liens for boomage charges regardless of the domiciles of the owners of logs, as shown in Lindsay Company v. Mullen, 176 U. S. 126, 20 Sup. Ct. 325, 44 L. Ed. 400, and elsewhere. It is also very effectively illustrated in the class of cases of which Green v. Van Buskirk, 7 Wall. 139, 19 L. Ed. 109, is one, where security on movable property like iron safes, obtained at the domicile of the parties, in accordance with the laws of that domicile where the property had its locus, is imperiled by the removal of the property to another state, where particular forms of giving security are required by statute. The general rule applicable here is stated in Walworth v. Harris, 129 U. S. 355, 364, 9 Sup. Ct. 340, 343, 32 L. Ed. 712, by a citation as follows:

"If a person sends his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations enforced in the country where he places it."

The case last cited not only recognizes the rule that the owners of the hulls of the Harvard and Yale submitted themselves to the laws of New Jersey with reference to the liens in question by sending the hulls there, but it also points out by implication that the liens thus acquired, when acquired, follow the property into the jurisdiction of other states than New Jersey, subject to certain qualifications, which qualifications do not exist at bar. Walworth v. Harris related to a cotton crop which, by the statutes of Arkansas, where the cotton was grown, was subjected to a lien in behalf of the landlord of the demised premises on which it was produced, securing rent. The cotton, after it was baled, was shipped with the consent, express or implied, of all interested in it to New Orleans, where it came into the hands of a broker, and where, according to the laws of Louisiana, it was subjected to a lien in his hands for his brokerage and charges. The opinion all through assumes that, except for the special limitations arising out of the laws of Louisiana, the lien imposed by the statute of Ar-

kansas followed the cotton to New Orleans; in fact, except for that assumption, the case would not have arisen, and there would have been no occasion for the opinion. Therefore, that assumption lies at the bottom of the whole. At pages 361 and 362 of 129 U. S., and page 341 of 9 Sup. Ct. (32 L. Ed. 712), the opinion says that the broker received the cotton "without any other obligation to account for the rent, or any other lien upon it, except such as would arise from the fact that such lien existed in Arkansas." This is undoubtedly a clear admission that the lien, although created by statute, continued to follow the cotton. Of course, though created by statute, the statute rested, as in the case at bar, on an implied contract between the parties in Arkansas. The opinion then observes that the laws of the two states differ on this subject, quotes the statutes of Arkansas, and then it quotes the Revised Code of Louisiana, giving the factor the implied pledge to which we have referred. It goes on, at the foot of page 362 and top of page 363 of 129 U. S., and page 342 of 9 Sup. Ct. (32 L. Ed. 712), to observe that the question was that of the conflicting rights of parties claiming under the laws of two different states, "each of which sustains the claims of the party residing in it"; and then follows the rule of Green v. Van Buskirk, which we have already cited, as it first appeared in 5 Wall. 307, 18 L. Ed. 599. Inasmuch as there are no conflicting statutory provisions, or other conflict in the laws, as between New Jersey, where the work of construction was performed, and Maine, which is the domicile of the Metropolitan Steamship Company, the general owner of the steamers, and Massachusetts, where the steamers were when the proceedings commenced, and inasmuch, rather, as it may be said with reference to liens of this character that the statutory systems of the three states are in harmony, it follows that there is no such conflict as there was in Walworth v. Harris to impugn the lien asserted before us. On the other hand, Walworth v. Harris goes far toward sustaining the positions of the petitioner; which positions will also be found to be much strengthened when we come to examine the character of the lien which the petitioner asserts.

It is true that the respondents rely on the words "within this state," found in the statute before us, and claim that their true interpretation is to limit the statute to domestic vessels. On the other hand, it is so clear that they relate only to the place where the work is done, or the materials furnished, that we need merely state that the proposition is made. Therefore, as the language of the statute is positive in all particulars, it results that there seems to be no logical reason why the lien in question should not be regarded as having extraterritorial effect. No decisions of the courts of New Jersey have been brought to our attention determining this question, and we are therefore compelled to look elsewhere. Mr. Justice Curtis considered the effect of a similar statute in Maine, differing from the statute of New Jersey only in that it contained some express provisions which required subsequent technical proceedings within a limited time to perfect the lien. In New Jersey nothing of this character is found. Even with the limitations found in the Maine statutes in The Young Mechanic, 2 Curt. 404, 414, Fed. Cas. No. 18,180, Mr. Justice Curtis, after great atten-

tion to the question, held, that the lien conferred by the local law was an "existing incumbrance" on the vessel. That this was a positive and substantial conclusion appears from various statements. It is true that he entertained the view, which then largely permeated the profession, to the effect that, although the lien was one in reference to the construction of a vessel, it might be enforced in admiralty; but in his investigation he threw aside that proposition, and came to the conclusion we have stated independently thereof. He described fully the lien for repairs recognized by the admiralty law, and showed that it is, as is now fully recognized, a jus in re, something which follows the vessel everywhere. He distinctly, at pages 412 and 413 of 2 Curt., and Fed. Cas. No. 18,180, contravened the proposition to the effect that the statutory lien was only a "privilege to arrest the vessel for the debt." He also pointed out, at page 405 of 2 Curt., and Fed. Cas. No. 18,180, that, while the statute in granting the lien on domestic vessels did not define the term "lien," yet the sound rules of construction required him to say that the word "was intended to be employed in the same sense in which it had been previously known and used," and that "the right or interest which it designates is the same right or interest which laborers and materialmen had possessed in foreign vessels." Then follows the conclusion at page 414 of 2 Curt., and Fed. Cas. No. 18,180, as we have already stated, namely, that the statutory lien in question "was an existing incumbrance on the vessel."

This exposition by Mr. Justice Curtis of the nature of the statutory lien arising from the construction of a seagoing vessel has, so far as brought to our attention, never been contravened by any federal authority superior to or equivalent with that of the court in which he sat. The Circuit Court of Appeals for the Third Circuit, while considering a Pennsylvania statute of like character to that before us, in The Vigilant, 151 Fed. 747, 753, 754, 81 C. C. A. 371, in January, 1907, dwelt at length on these observations of Mr. Justice Curtis, and evidently approved them throughout. Sitting where he sat in 1855, we are unable to perceive why his view should not be followed to its fullest extent, and why we should not hold that the lien given by the statute of New Jersey bound the property, and gave a specific interest in it which might be enforced anywhere according to the rules of the chancery courts, and which therefore existed when the present bill was filed, notwithstanding the vessels were then in this circuit and not in the state of New Jersey.

After this general statement, we are in a position to examine generally the authorities with reference to the topic we are discussing. As we have already said, there are no decisions of the courts of New Jersey which assist us here. It is not necessary that we should go through them in detail and point out this fact. We need only say that, after examining them all, we pass them by.

As to the general proposition which we have stated with reference to the power of New Jersey to impose a lien on property within its jurisdiction which shall follow it outside of its jurisdiction, the authorities clearly establish this proposition as to the property domiciled within that state; that is, property the locus of whose ownership was there. The Circuit Court of Appeals for this circuit, in The Iris, 100

Fed. 104, 105, and 112, 40 C. C. A. 301, squarely support this proposition with regard to property thus domiciled; that is, with reference to domestic vessels. Farther than that the authoritative decisions do not expressly go. No court seems to have had any occasion to consider in this respect any distinction between domestic vessels and vessels under construction voluntarily brought within the jurisdiction; but the rules applicable to this class of questions seem to be of such a character as to shut out subsidiary distinctions of this nature. The power of every state, so far as not restrained by the Constitution of the United States, over property freely brought within its jurisdiction, not merely for transit through it, cannot ordinarily be questioned; and it seems a violent proposition that the lien law with reference to construction of vessels is not as effective on one in process of building in Kittery, the owner of which resides in Portsmouth, as with reference to a similar vessel the owner of which resides within the borders of this state.

It is true that in Cuddy v. Clement (decided by the Circuit Court of Appeals for this circuit on January 16, 1902) 113 Fed. 454, 463, 51 C. C. A. 288, reference was made to the suggestion that the Ohio statute furnishing liens was limited in its intent to domestic vessels; but the decision was not allowed in any way to turn on that suggestion. It is also true that, so far as any state statute may have reference to any work done on a foreign vessel, it is ineffective, because, if it contravenes in any respect the regulations known to the admiralty law, it would be wholly invalid; and, if it does not contravene them, it would simply be a useless enactment. The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770. What we have to deal with here, however, was not a foreign vessel in any legal sense of the word, although owned out of the state of New Jersey. The Harvard and the Yale never had become vessels in the sense of the admiralty law, and the question with reference to the power of the state to affect them with liens, with the implied consent of the owner who voluntarily brought the hulls into the state and subjected them to the operation of the statute, is the same which would apply to any other personal property not sailing the ocean or engaged in transportation of any character.

The suggestion has been made orally that a statute of so sweeping a character as this at bar, which undertakes to provide for liens for repairs and supplies to every kind of a vessel, which, of course, includes a foreign vessel, and points out a remedy therefor, is at least void in part, because in conflict with the principles of the federal admiralty, and is, therefore, void in toto. This is in harmony with the suggestion which was made at the top of page 523 in The Edith, 94 U. S. 518, 24 L. Ed. 167. At one time, and also in some state courts, suggestions of this character have been accepted as effectual; but this has never occurred in the local courts of New Jersey, and has been entirely disregarded of late years in the federal tribunals. Some of these statutes, like the statute, in consideration in Cuddy v. Clement, already referred to, were passed long before the present admiralty rules were settled by the Supreme Court; and some of them were passed even before it was determined that the federal courts had maritime jurisdiction over the Great Lakes. They were perhaps applicable to all conditions

as understood when they were enacted, though now in part void as conflicting with the maritime jurisdiction of the federal courts. It is a severe rule which undertakes to hold a statute totally void when it only fails in certain applications, and much more harsh to apply this rule to the class of lien statutes which originated as we have said. In the statute under consideration there is no indication, express or implied, of any purpose that it should stand as a whole or fall as a whole. This particular statute has not been passed on, so far as the case before us is concerned, by any court of authority, as we have already said. Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487, has been cited to us as applicable on this particular point; but it is of no avail. On the other hand, the Illinois statute, which was as broad as the New Jersey statute, and which by its terms applied to "every sailing vessel," etc., was sustained, so far as it was in question, in The J. E. Rumbell, 148 U. S. 1, 13, 19, 13 Sup. Ct. 498, 37 L. Ed. 345. There was a thorough discussion by the Circuit Court of Appeals for the Third Circuit of a like Pennsylvania statute in The Vigilant, 151 Fed. 747, 81 C. C. A. 371, ubi supra, and the statute was sustained for the purposes then before the court. The latest illustration of the rule that a statute may be had in part and good in part is of a striking character. Berea College v. Kentucky, 211 U. S. 45, 54, 29 Sup. Ct. 33, 53 L. Ed. ——. We find nothing now authoritative in the decisions of the federal courts which would justify us in rejecting the entire statute before us because of any suggestion of this character.

Of course, the suggestion of inconvenience is made as to giving statutory liens of the character in question effect over so broad a territory concerning perhaps to a very serious extent innocent parties. That this, however, is not a sufficient objection is plain, because the same objection applies to all provisions of statutory or admiralty law giving unrecorded liens for supplies or repairs. It would not be denied that, if these steamers had come into New Jersey for repairs which might well have involved vastly more than the amounts involved here, the liens would have held good all over the world. Therefore, as we have said, this objection cannot be a valid one. In each case innocent parties have only two resorts. One is, to trace so far as possible the history of the vessel with reference to her construction or repairs; the other is reliance on the warranty of the persons with whom they deal. Of course, there is always the relief which comes in such cases, as much with reference to contracts for construction as contracts for repairs, arising from lapse of time. In the present case, the records shows that no party concerned in making the mortgages in question here made any inquiries in regard to the history of the steamers; so that, while there are undoubtedly innocent bondholders, apparently none were misled into any difficulties which could not have been avoided by reasonable inquiries. Indeed, on cross-examination, Mr. Bowen, who was examined in behalf of the American Trust Company, and who was secretary of that corporation, testified that, when the mortgages were taken, that corporation, which is the mortgagee, made, so far as he knew, no inquiries about unpaid debts or liens; and he gave other detailed information establishing the proposition that no investigation was made with reference to the topic before us, except to secure a certificate from

the Metropolitan Steamship Company, particularly as to the mere matter of cost, containing, however, the significant assurance that the title "has been, or will be, vested in you free and clear from all liens and incumbrances." Evidently, so far from lulling the mortgagee to sleep, this certificate was a distinct notice of the existing liens. However, we refer to the testimony of Mr. Bowen, not because that or the certificate are, without something else, material to this case, but simply to illustrate our propositions.

A point has been made that there is no evidence in this case tending to show that the work and materials furnished by the petitioner were furnished on the credit of the vessels. It is true that, when reliance is placed on a local statute to establish an admiralty lien for repairs and supplies furnished to a domestic vessel, the lien can be maintained only on the same principles, and according to the same rules, which affect the ordinary maritime lien. Therefore, in such a case, it must be shown, either by express evidence or by presumption, that credit was given the vessel. On the other hand, as decided by the Circuit Court of Appeals for this Circuit in The Iris, 100 Fed. 104, 40 C. C. A. 301, where a lien is not an admiralty lien in the proper sense of the word, but is given for work or materials furnished in the construction of a vessel, it is sufficient at the outset that the terms of the statute were complied with; that is to say, that the work or materials were furnished and went into the vessel. This decision was approved at page 753 of The Vigilant, 151 Fed. 747, 81 C. C. A. 371, ubi supra. On this point there is no essential difference in the statutory provisions between those in The Iris and those in the case now before us; so that the rule laid down in The Iris applies here, and establishes as a matter of fact that a lien was secured by the statutes of New Jersey. The rule is the same in New York. Mott v. Lansing, 57 N. Y. 112, and subsequent cases.

The respondents claim that the petitioner has lost its right to proceed on this petition by reason of estoppel, waiver, or laches. On its face, their position about these propositions is a weak one, because, although to a certain extent estoppel, waiver, and laches run into each other, yet they belong to different departments of the law, while the respondents develop none of them efficiently and distinctly, but proceed as though on the hope that somewhere between the three there is a defense. Estoppel is an independent topic in the law governed by technical rules, and the respondents' case clearly lacks the elements required by those rules.

There is absolutely no basis for the defense of laches. The petitioner's contract on the Yale was completed on June 29, 1907, and the same day she left its yard; that on the Harvard was completed on September 8, 1907, and the same day she left the yard. The season for the work of the Yale and the Harvard on their line between Boston and New York City was in the summer and early autumn. Certainly it cannot be maintained that the petitioner was guilty of laches because it allowed the steamers to make out their season, which had so little time to run, and during which, with the enormous earnings of these vessels, they had a reasonable expectancy of making more than sufficient to cover the expenses of operation and the amounts

due the petitioner. In addition to this, the Metropolitan Steamship Company, for whom the Yale and the Harvard were built, had solicited and received leniency in the form of a note for $25,000, payable on the 1st day of November, 1907. Under the circumstances, there could be no charge of laches arising from delay to the close of the season, which occurred quite contemporaneously with the coming due of the note referred to. All that took place in this connection at any time before the winter of 1907–08 was only an ordinary leniency, the refusal of which would have been unreasonable and harsh.

The bill in this case was filed on January 29, 1908, and the preliminary order was made on the same day, securing the practical possession in the court of the steamers in question, followed by the appointment of receivers on the 4th day of the next month. We have shown that, according to the decisions, and on principle, the lien in this case, although not maritime, is akin thereto, and operates as a jus in re; and no maritime lien has ever been regarded as lost by delay no longer than that which occurred here, unless under exceptional circumstances, even without the just expectation of the leniency given here, as we have pointed out. We see no basis for the defense of laches.

The defense of waiver is apparently urged from several different aspects. Of course, one aspect would be constituted by the facts which we have stated pro and con with reference to laches; but that aspect is already disposed of. Another aspect is that the petitioner waived the liens by allowing the vessels to go to sea, more especially by allowing them to go out of the jurisdiction. We have fully covered this proposition in our discussions of the nature of the liens. Although not speaking of a lien arising out of the construction of a vessel, yet, in discussing the effect of a statute of Pennsylvania like that at bar within the district of New Jersey, Judge Gray, speaking in behalf of the Court of Appeals for the Third Circuit, in The Vigilant, 151 Fed. 753, 754, 81 C. C. A. 371, 378, already cited, refers generally to the fact that vessels are wanderers, and adds:

"The lien created by the state statutes would be of little value if it ceased to exist whenever the ship chose to sail beyond the limits of the state."

The pith of the statute in this case is given at page 749 of 151 Fed., and page 373 of 81 C. C. A., and evidently the learned judge, in this observation we have cited, makes no distinction, so far as any question we have before us is concerned, between work of construction and liens for repairs or supplies. Of course, in view of the long line of authorities settling the rule to the contrary, it would not be contended that the taking of the note or notes we have referred to effected a waiver. Therefore, so far as this subdivision is concerned, we find neither authority nor principle to sustain the respondents.

The other proposition with reference to the question of waiver is that the petitioner impliedly or expressly assented to a mortgage being given, containing full covenants of title, without objection. This defense would ordinarily arise under the rule of estoppel, but, as we have said, there is no proof here of any such "standing by" as is relied on in order to sustain that particular defense. The most that seems to be

proven is that the petitioner knew in a general way that there was a mortgage, or was to be a mortgage, and yet failed to notify anybody of its claim of priority. There seems to have been a general mortgage given by the Metropolitan Steamship Company in 1905, which covered all the boats it then had, and provided that it should attach to boats afterwards acquired. Of course, at common law, the several boats were properties of a character too distinct and independent to be reached in advance by any such stipulation. The rule which sometimes is applied at common law to replenishing stock of goods, and sometimes to incidents of a franchise, whether it be in rolling stock or other subordinate properties, involves a connecting thread which is lacking here. Even if such a stipulation could be enforced in equity, as perhaps it might be in case of a remedy being seasonably asked for, it cannot, according to well-settled rules, be enforced as against intervening equities of strangers. This is the general rule where no statute intervenes. Bear Lake Company v. Garland, 164 U. S. 1, 21, 17 Sup. Ct. 7, 41 L. Ed. 327. The equity of the petitioner would rise at least as high as the equity of the mortgagee under this original mortgage.

The mortgages on which the respondents particularly rely are the supplemental mortgages made in accordance with the terms of the original mortgage, one of which was on the Yale, given May 25, 1907, and the other of which was on the Harvard, given August 14, 1907. It will be seen that both of these were before the petitioner's contracts were respectively finished, and, therefore, before the petitioner had any rights which it could enforce. Certain evidence of witnesses is relied on by the respondents, among which is the following, appearing in the cross-examination of Mr. Fletcher:

"Cross-Int. 128. Did you know, or did you at any time hear, that the Harvard and Yale, when completed, were to be mortgaged to secure bonds? Ans. Why, generally, yes. That is customary."

Proof of this character is, of course, ineffectual. It does not appear that the petitioner knew, or was called on to investigate, the terms of the mortgage or the relations of the parties thereto, or to take any action in regard to it, pro or con. All that we find further on the topic is in the cross-examination of Mr. Austin, general manager of the steamers of the Metropolitan Steamship Company, to the effect that "it was understood" between Mr. Fletcher and himself that the work should be hastened in order that the bonds might be gotten out; and that it was also "generally understood with Mr. Fletcher" that bonds were to be issued, although he disavows any recollection of any statement to that effect. Nothing said by a witness of this character is, of course, evidence according to the rules of law; and all the proofs taken together with regard to any knowledge or understanding on the part of the petitioner with reference to any mortgage actually made or proposed amount to nothing in the law. At the most, all is only a part of a loose understanding that the petitioner had some knowledge that the Metropolitan Steamship Company had financed its operations, and expected to meet all its floating liabilities.

We are forced to consider the bearing on this petition of Globe Company v. Walker, 210 U. S. 356, 28 Sup. Ct. 726, 52 L. Ed. 1096.

The rule, as it has continued to be practiced with reference to the remedy where the right is given by statute, is that stated in 1830 in Barden v. Crocker, 10 Pick. (Mass.) 383, 389, as follows:

"The distinction to be taken is where a statute does not vest a right in a person, but only prohibits the doing of some act under a penalty. In such a case the party violating the statute is liable to the penalty only; but where a right of property is vested in consequence of the statute, it is to be vindicated by the common law, unless the statute confines the remedy to the penalty."

In this case, the New Jersey statute conforms exactly to the phraseology of the last portion of the paragraph quoted. The statute gives, as we have already said, in the first section an absolute lien for perpetuity, or until payment, and the following sections, without containing any expressions whatever confining the remedy to that provided by those sections, or without any language excluding any other remedy, authorize in a local tribunal proceedings very much akin to a bill in equity. The distinction made in Barden v. Crocker, which has been so extensively practiced on, is between penal legislation and legislation giving civil rights; but in Globe Company v. Walker that distinction seems to be done away with. That relates to the copyright statutes, on which, according to the decisions of the Supreme Court of the United States, the rights of the author depend exclusively. That statute was constructed on the same principle as the statutes referred to in Barden v. Crocker and the New Jersey statute under consideration here. Nevertheless, the Supreme Court held that the remedy given by the copyright statute was exclusive. If that rule is to be applied strictly and stringently to the statute in question here, a new difficulty would be presented of a very serious character; but we think the long-settled practice of various courts, including the Supreme Court, settles the matter otherwise as applied to statutes like those before us. First of all, the result of cases of the class of Dennick v. Railroad Company, 103 U. S. 11, 26 L. Ed. 439, and Stewart v. Railroad Company, 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537, brings directly before us the question whether Globe Company v. Walker applies where a proceeding is of such a character that it is not strictly local, but ought to be maintained in some jurisdiction other than that in which the statute was enacted. It is true that some of this class of decisions contain expressions to the effect that the statutes there involved only removed an obstruction in the way of the suits, and yet the general effect of them is to maintain in a foreign jurisdiction a right of action, but in a method unknown in the statutory jurisdiction. However this may be generally, any rule which would otherwise prevent our proceeding here has clearly been broken down with reference to the state lien statutes in many cases. We note especially again The J. E. Rumbell, 148 U. S. 1, 13, 13 Sup. Ct. 498, 37 L. Ed. 345. There, the Illinois statute, like the one before us, gave, in behalf of the lien described, a remedy by petition in a local court of record, and suggested none other. On the theory of Globe Company v. Walker, literally applied, no other would be permissible; and yet, as no state court could have proceeded to enforce the particular lien in question, which was strictly maritime, the statute would have entirely broken down

if the remedy had been strictly limited by the Supreme Court according to its terms. Nearly all the state statutes giving liens prescribe the form of proceedings; yet in all of them, including The Rumbell, the federal courts have proceeded without hesitation to give a remedy in admiralty. So in Commonwealth Roofing Company v. North American Trust Co., 135 Fed. 984, 68 C. C. A. 418, already cited, the Circuit Court of Appeals for this circuit did not hesitate, under circumstances like those before us, to give a lienor the benefit of his lien by summary proceedings, of a character, of course, entirely different from that which the state statute provided; although there, as in The Lottawanna, 21 Wall. 558, 578, 22 L. Ed. 654, certain preliminary proceedings had been required by the Legislature. The force of our position is particularly illustrated in Commonwealth Roofing Company v. North American Trust Company, because the preliminary statutory requirements were recognized, and proper force given to them, yet, inasmuch as the receiver was appointed by the Circuit Court before the conditions were complied with, the Circuit Court felt itself bound to protect the inchoate lien. The situation here is substantially the same as in the case last cited. This court interposed by its receiver, and it should, on this intervening petition, give the lienor a remedy, although in form of a wholly different character from that provided by the statute.

So far the path is a thorny one, although the difficulties do not come from the application of fundamental rules of law, but from inapt expressions and rulings, made from a narrow point of view. Some of these expressions at some time were accepted as authoritative, but the shifting views of the Supreme Court with reference to certain rules of admiralty jurisdiction, and certain admiralty rules in other respects, made some of them authoritative at one time, and have complicated the position throughout. None of them are authoritative for us at present. We can, however, look at the case from an enlarged point of view with more satisfaction. We are an equity court, dealing with property on equitable principles, and having to assert to a greater or less extent authority and jurisdiction to determine in all particulars the title to property which we may be called on to dispose of by a foreclosure sale or otherwise. Of course, we are not, on the one hand, proceeding against the res as an admiralty court does, so that we necessarily undertake to give title as against all the world; neither are we always under obligation to make absolutely plain the title we in fact pass to purchasers, or to clear it from incumbrances. Yet, where the circumstances seem fairly to require that, for the interests of all concerned, we should determine the title, and perhaps clear it, we may properly do so. Such is the present condition.

The steamers in question here are navigating from Boston to the city of New York, and, in so doing, may often pass through waters within the jurisdiction of New Jersey, and may have occasion to touch there, or even to go there for repairs. We may properly protect in this case an innocent purchaser, buying under a decree which we may enter, from any unfortunate contingencies arising under these circumstances. As we have said, the liens given by the statutes of New Jersey are perpetual until the claims to which they relate are paid. Let

the steamers be out of the jurisdiction of New Jersey so much as they may, yet the right to enforce the liens in question would revive in the courts of that state whenever they might come within their jurisdiction. This was the conclusion of the state courts of Michigan in The Winnebago, 205 U. S. 354, 27 Sup. Ct. 509, 51 L. Ed. 836, with reference to a vessel constructed in Michigan, thereafterwards engaged in interstate navigation outside the state, and still thereafterwards returning, when she was seized under local process for the purpose of enforcing the lien given under a statute very similar to that at bar. The local courts held that the lien continued, and enforced it; and, on error from the Supreme Court to the Supreme Court of the state of Michigan, it was held that there was nothing in the federal Constitution or laws which prohibited this proceeding, and it was affirmed. The opinion, at page 363 of 205 U. S., and page 512 of 27 Sup. Ct. (51 L. Ed. 836), observed:

"The contract in this case being for the construction of a vessel, and its enforcement within the power and jurisdiction of the state courts, we do not think that execution of such a decree can be avoided because the vessel engaged in interstate commerce."

This case has been cited before us with a view of establishing propositions broader than that which we have explained, but it cites only what we have said. The effect is sufficient for our present purpose; that is to say, that a purchaser from us, unless protected, might hold title subject to the contingency which we have named. So that we have facts sufficient here to establish at least an imperfect lien, or a ·lien inchoate in its character, to which we ought to give fruition in accordance with the ruling to which we have referred in Commonwealth Roofing Co. v. North American Trust Company, 135 Fed. 984, 988, 989, 68 C. C. A. 418.

In conclusion, for the reasons we have given, we ought to sustain this petition.

Let there be a decree sustaining the petition, establishing the liens on surrender of the promissory notes received by the petitioner, and directing a master.

NOTE BY THE COURT. This opinion makes no observation with reference to the fact that, at the time the bill was filed, the Harvard and Yale were lying in the district of Massachusetts. No point about this was made by the parties; but the case is so important that the court concludes it ought not to overlook it. The Maine district is the district where the original bill was filed, and where the corporation owning the Harvard and Yale was created and had its domicile. Therefore, by well-settled principles in equity, this court can compel the corporation to make such conveyances and adjustments with reference to any of its personal property, wherever located, that may be proper; so long as there is no interference by courts in other jurisdictions. As also the mortgagee filed a cross-bill, this court has like power over it for present purposes. Therefore, as the Circuit Court for the district of Massachusetts has not in any way interfered, and as there is no probability of its interference, this court has full jurisdiction, as

between its receivership and the ancillary receivership, to dispose of the questions involved in this opinion, notwithstanding the steamers were in Massachusetts at the time the bill was filed and the receivers appointed.